STATE OF NEBRASKA, APPELLEE, V.
DARRIN J. MCHENRY, APPELLANT.
682 N.W.2d 212

Filed June 25, 2004. No. S-03-217.

Darrin J. McHenry, pro se.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. INTRODUCTION

Darrin J. McHenry appeals from an order of the district court for Lincoln County denying his motion for postconviction relief

without an evidentiary hearing. We conclude that McHenry's claims on appeal are without merit. Accordingly, we affirm.

## II. BACKGROUND

McHenry's initial conviction was reversed on appeal, and the cause was remanded for a new trial. *State v. McHenry*, 247 Neb. 167, 525 N.W.2d 620 (1995) (*McHenry I*). The facts underlying the current case are summarized in our opinion affirming McHenry's convictions from his second trial, found at *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996) (*McHenry II*). They are repeated here only as necessary to our disposition of McHenry's postconviction claims.

An information was filed against McHenry on January 22, 1993, charging him with aiding and abetting first degree murder and aiding and abetting attempted robbery for his involvement in the death of Richard Sterkel. Sterkel was found dead in North Platte, Nebraska, and an autopsy revealed that the cause of death was manual strangulation, compression of the neck, and multiple blunt injuries to the head, neck, and chest. On August 4, an amended information was filed, adding charges of first degree sexual assault and aiding and abetting first degree sexual assault.

McHenry was living with three other men at a transient encampment near the place where Sterkel's body was found. The men had invited Sterkel to drink with them, and he stayed for a few days. Both of McHenry's codefendants testified that on July 28, 1992, the day of Sterkel's death, McHenry initiated an assault on Sterkel after the men had been drinking. McHenry and two others began beating Sterkel and forced him to show them where he had hidden his wallet in the woods. Sterkel was brutally beaten and strangled. His body was found 2 days later.

Following a jury trial, McHenry was acquitted of aiding and abetting first degree sexual assault but convicted of the remaining counts. See *McHenry I*. Because of the trial court's jury instruction on reasonable doubt, McHenry's convictions were reversed on direct appeal. *Id.*

McHenry was tried again, convicted of aiding and abetting first degree murder and aiding and abetting attempted robbery, and acquitted of sexual assault. See *McHenry II*. On his second direct appeal, McHenry's conviction for aiding and abetting

attempted robbery was reversed as violating the Double Jeopardy Clause's prohibition against multiple punishments for the same offense, because the Legislature had not affirmatively indicated an intent to punish defendants independently for felony murder and for the underlying felony. McHenry is currently serving a sentence of life imprisonment for aiding and abetting first degree murder. He was represented by the same two attorneys in both trials and in both appeals.

On February 12, 2003, McHenry filed a motion for postconviction relief. The district court determined that there was no denial of any constitutional right which would warrant granting the motion. The motion was denied without an evidentiary hearing. The court also overruled McHenry's motion for appointment of counsel. McHenry appeals.

## III. ASSIGNMENTS OF ERROR

McHenry assigns, reordered and restated, that the district court judge erred in failing to recuse himself sua sponte from considering McHenry's postconviction motion because some of the postconviction allegations involved the judge's purported misconduct. McHenry further assigns that the district court erred in (1) failing to find that the prosecutor had engaged in misconduct by conspiring with McHenry's defense counsel to deny McHenry his right to a speedy trial; (2) failing to find that his trial counsel had provided ineffective assistance by (a) failing to investigate a substantial defense, (b) failing to object to the court's prejudicial remarks made during voir dire of his second trial, (c) failing to object to vague jury instructions; (d) failing to assert his right to a speedy trial or seek a discharge once that right had been violated; and (e) conspiring with the prosecutor for the purpose of denying him his right to a speedy trial; and (3) failing to grant him an evidentiary hearing and to appoint postconviction counsel.

## IV. STANDARD OF REVIEW

■ A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Ray*, 266 Neb. 659, 668 N.W.2d 52 (2003).

## V. ANALYSIS

 An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. When such an allegation is made, an evidentiary hearing may be denied only when the records and files affirmatively show that the defendant is entitled to no relief. *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003). An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002).

### 1. FAILURE TO RECUSE

 McHenry initially claims that the district court judge erred in failing to recuse himself sua sponte from ruling on McHenry's postconviction motion because some of McHenry's allegations involved the judge's purported misconduct. However, "[t]here is no rule of law which automatically disqualifies a judge who has presided at trial from subsequently considering a postconviction action." *State v. Joubert*, 235 Neb. 230, 235, 455 N.W.2d 117, 122 (1990). We have reviewed McHenry's claims of judicial misconduct, and we see no indication that the purported "misconduct" was of the type that would have required the judge to recuse himself. Moreover, McHenry waived this issue by failing to request the judge's recusal when McHenry was aware of the court's actions of which he complains. See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998) (refusing to consider on direct appeal whether trial judge should have recused himself when defendant was aware of judge's conduct and did not request recusal). This claim is without merit.

### 2. PROSECUTORIAL MISCONDUCT

McHenry alleged that the prosecutor engaged in prejudicial misconduct by filing an amended information in an effort to "cover up" the fact that the time for trial under the speedy trial statute had expired for the charges in the original information. The district court found this claim to be frivolous. The State charged McHenry with aiding and abetting first degree murder and aiding and abetting attempted robbery in the original information filed in January 1993. The amended information filed in

August added charges of first degree sexual assault and aiding and abetting first degree sexual assault. With respect to the charges in the amended information, McHenry was acquitted of aiding and abetting first degree sexual assault in his first trial, *McHenry I*, and acquitted of sexual assault in his second trial, *McHenry II*.

The record shows that by the time McHenry was arraigned on the amended information on August 12, 1993, his trial on the original information had already been rescheduled for September 14. The trial in fact began on September 14. Further, the State's filing of an amended information would not have tolled the speedy trial time limit on the same charges included in the original information. See *State v. French*, 262 Neb. 664, 670, 633 N.W.2d 908, 914 (2001) (stating that "[i]f the amendment to the complaint or information does not change the nature of the charge, then obviously the time continues to run against the State for purposes of the speedy trial act"). McHenry was acquitted of both charges contained in the amended information, and, to the extent that the amended information contained the same charges as the original information, it did not "cover up" or impact the trial deadline on those original charges. We agree with the district court that this claim is without merit.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant was represented both at trial and on direct appeal by the same lawyers, generally speaking, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief. See *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002).

In order to establish a right to postconviction relief based on a claim of ineffective counsel, the defendant has the burden to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. The defendant must also show that counsel's deficient performance prejudiced the defense in his or her case. The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *State v. George*, 264 Neb. 26, 645 N.W.2d 777 (2002).

In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient

performance, the result of the proceeding would have been different. *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003). In determining whether a trial counsel's performance was deficient, there is a strong presumption that such counsel acted reasonably. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995). When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id.*

### (a) Failure to Investigate

McHenry alleged that his trial counsel provided ineffective assistance by failing to investigate whether Sterkel could have died of alcohol poisoning. He alleged that counsel for a codefendant had given McHenry's trial counsel a letter from a private pathologist prior to McHenry's trial that cast doubt on the State's expert testimony regarding the cause of Sterkel's death. McHenry attached a copy of the pathologist's letter dated July 19, 1993, as an exhibit to his postconviction motion. The defense of alcohol poisoning, which McHenry now suggests, was not raised at either trial. The State's expert testified that the cause of death was strangulation, compression of the neck, and multiple blunt injuries to the head, neck, and chest.

McHenry alleged that testimony at trial showed that Sterkel had ingested large amounts of alcohol, that Sterkel had a known history of alcohol problems, and that a whiskey bottle was found under Sterkel's body. McHenry claims that these facts, coupled with the pathologist's letter, would have put a reasonable attorney on notice to investigate further the possibility of alcohol as the cause of Sterkel's death. He claims that a possible scenario of Sterkel's death is that after he was beaten, Sterkel then drank enough to cause his death.

The State's expert testified at both of McHenry's trials that he did not believe alcohol was a contributing factor to Sterkel's death and that Sterkel had extensive injuries sufficient to have caused his death. He recognized that the alcohol level in Sterkel's blood was high but explained that an elevated alcohol level is not unusual in post mortem examinations because alcohol forms in the body as it decomposes. He further opined that because of Sterkel's history of chronic alcoholism, he would have been able to tolerate high levels of blood alcohol.

In the private pathologist's letter attached to McHenry's motion, the pathologist opined that strangulation was a sufficient cause of death. He believed that the blunt force injuries alone would be insufficient to cause death in ordinary circumstances. However, he did indicate that blunt force injuries when combined with a high blood alcohol content, such as the autopsy revealed, could have resulted in death, although the death would have been more prolonged. He believed it was possible but not probable that Sterkel had died of a combination of strangulation and a beating. He did not endorse the scenario McHenry posits in his postconviction motion.

The court found that the combination of causes contributing to Sterkel's death was irrelevant where McHenry's defense at trial was that he did not participate in the beating. Following the second trial, McHenry was again convicted of aiding and abetting first degree murder and did not claim in either of his direct appeals that the evidence was insufficient to convict him. The pathologist's letter does not suggest that Sterkel died of alcohol poisoning or that he would not have died as a result of the intentional injuries he sustained. McHenry has failed to allege the existence of any exculpatory fact which could have been discovered by his trial counsel. See *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000). Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002).

### (b) Failure to Object to Court's Comments

McHenry alleged that his trial counsel was ineffective for failing to object to the court's comments made to the jury during voir dire of his second trial concerning the O.J. Simpson trial, which was then ongoing. McHenry claims that such comments were prejudicial. He alleged that the Simpson trial had become a media circus by June 1995 and that the national consensus was to convict Simpson.

The record shows that the court admonished the jury to ignore the Simpson trial and stated that criticisms of the jury system resulting from that trial were overblown. The court reminded the jurors that "[y]ou're simply here to decide the issue of guilt or innocence based on the evidence adduced by the State of Nebraska." In his postconviction motion, McHenry

construes these comments as "a call to the jury to convict." He alleged that the last sentence was an attempt by the court to have the jury ignore evidence adduced by the defense.

 Trial courts are to refrain from commenting on evidence or making remarks prejudicial to a litigant or calculated to influence the minds of the jury. *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990). However, a defendant must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant. *Id.*

The court's statements were made before the trial commenced, and it did not comment on the evidence presented. The court's statement that the jurors were to decide the issue of guilt or innocence based on evidence adduced by the State acknowledged that the State had the burden of proof, which burden was fully explained to the jurors at the same time that this statement was made. McHenry's claim that these comments, made during voir dire of the jury, were prejudicial is without merit, and his defense counsel's failure to object to the comments was not ineffective assistance of counsel.

### (c) Failure to Object to Jury Instructions

McHenry alleged that his trial counsel was ineffective for failing to object to vague jury instructions. McHenry does not specify in which trial this failure purportedly occurred. We presume that he is referring to the jury instructions from his second trial.

Some of the jury instructions from McHenry's second trial were addressed in his direct appeal. See *McHenry II*. However, McHenry specifically refers to instruction No. 1 in his postconviction motion, and instruction No. 1 was not addressed in *McHenry II*. Thus, McHenry is not barred from claiming that his attorney should have objected to this instruction.

The transcript shows that instruction No. 1 is a preliminary instruction, which, in relevant part, read: "In determining what the facts are you must rely solely upon the evidence in this trial and that general knowledge that everyone has. You must disregard your personal knowledge of any other specific fact." McHenry claims that "general knowledge" is an example of confusing language because the term is too vague and requires the jury to

discern the difference between general and personal knowledge. In ruling on the postconviction motion, the district court found that neither phrase was a term of art beyond a juror's comprehension and that McHenry had not been prejudiced by the instruction.

Defense counsel is not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading. See *State v. Tucker*, 257 Neb. 496, 598 N.W.2d 742 (1999). This court has held that a postconviction court is not required to hold an evidentiary hearing on a claim that an attorney was ineffective for failing to propose an alternative instruction when the instruction given was a standard instruction which had consistently been found adequate and constitutional by this court. *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002).

The first sentence which McHenry claims is confusing is identical to language in the standard instructions used in criminal trials, and the second sentence conveys the same meaning. See NJI2d Crim. 1.0(4). The second sentence of the standard instruction provides: "You must disregard anything else you may know about this case." *Id.* In the context of the instruction as a whole, we agree with the district court that the jury was unlikely to have been confused by the use of the expressions "general knowledge" and "personal knowledge" in the same instruction. McHenry has failed to show that the outcome of his trial would have been different if the court had used the exact language of the standard instruction instead of the variation which it used. This claim of ineffective assistance of counsel is without merit.

### (d) Speedy Trial Violation

In his motion for postconviction relief, McHenry made several allegations related to his claim that his right to a statutory speedy trial was violated by his trial counsel's deficient performance prior to the commencement of his first trial. McHenry generally alleged that (1) the 6-month statutory limit for trying him on the charges in the original information had expired by the time of his first trial because, in part, McHenry had refused to consent to his trial counsel's request for a continuance, (2) trial counsel failed to assert McHenry's right to a speedy trial or seek a discharge on that ground, and (3) trial counsel colluded with the prosecutor for

the purpose of denying McHenry his right to a speedy trial. McHenry does not claim that he was denied his constitutional right to a speedy trial, and we do not consider such topic.

McHenry specifically alleged in his postconviction motion that in June 1993, his defense counsel approached him with a waiver of his speedy trial right, which he refused to sign. McHenry further alleged that he informed his counsel at the time his counsel approached him with the waiver that he wanted a speedy trial. He alleged that a week after this incident, he received a letter from his attorney stating that the court would grant the continuance even though McHenry had not personally waived his speedy trial right. McHenry alleged that he attempted to call his attorney and immediately wrote back to correct this "misunderstanding" but did not receive a response. The record indicates that after the motion for continuance was filed in June 1993, the court rescheduled trial from July 6 to September 14 because McHenry's counsel was not prepared for trial.

McHenry contends that where he refused to waive his right to a speedy trial, the postconviction court erred in determining that his claim of ineffective assistance of counsel was without merit.

Neb. Rev. Stat. § 29-1207 (Reissue 1995) requires discharge of a defendant whose case has not been tried within 6 months after the filing of the information, unless the 6 months are extended by any period to be excluded in computing the time for trial. *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). Section 29-1207(4)(b) excludes delays "resulting from a continuance granted at the request or with the consent of the defendant *or* his counsel." (Emphasis supplied.) The plain language of § 29-1207(4)(b) anticipates a request for a continuance made solely by counsel, as occurred in this case. See *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002) (in reading statute, court must determine and give effect to purpose and intent of Legislature as ascertained from entire language of statute considered in its plain, ordinary, and popular sense).

Under § 29-1207, this court has stated that a defendant has the "right to waive a speedy trial and consent to a continuance as long as he was properly advised either by counsel or the court of his rights to a speedy trial." *State v. Williams*, 211 Neb. 650, 654, 319 N.W.2d 748, 751 (1982). When a delay in trial is

attributable to a defense motion for a continuance filed within the statutory period, defense counsel is not ineffective for failing to file a motion to dismiss. See *State v. Turner, supra* (rejecting defendant's claim on direct appeal of ineffective assistance, based in part on his counsel's alleged failure to renew motion for speedy trial dismissal, when delays, including defense counsel's motions for continuance, were properly excludable under § 29-1207(4)). Although we have not addressed the specific issue of a defendant's refusal to consent to a continuance, we have recognized that defense counsel's reasonable strategic decisions could effectively waive a defendant's statutory right to speedy trial. See *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995) (rejecting defendant's postconviction allegations that defense counsel, in filing motion to suppress, provided ineffective assistance by failing to protect defendant's right to speedy trial). In *Russell*, we stated that "*defense counsel's decision* to toll the 6-month time period in order to move to suppress evidence was a competent decision." (Emphasis supplied.) 248 Neb. at 729, 539 N.W.2d at 14.

This court has stated that " 'except for such basic decisions as . . . whether to plead guilty, waive a jury trial, or testify in his or her own behalf, a defendant is bound by the tactical or strategic decisions made by his or her counsel.' " *State v. Nesbitt*, 264 Neb. 612, 623, 650 N.W.2d 766, 778-79 (2002). Given the language of § 29-1207(4)(b) and our case law, it is clear that the statutory right to a speedy trial is not a personal right that can be waived only by a defendant. This conclusion is in accord with cases decided elsewhere under similar statutory language.

Indeed, several courts in other jurisdictions have explicitly held in direct appeals that a defense counsel's request for a continuance in order to prepare for trial waived the defendant's statutory right to speedy trial over the defendant's objection to the continuance. See, *Townsend v. Superior Court*, 15 Cal. 3d 774, 543 P.2d 619, 126 Cal. Rptr. 251 (1975) (concluding that defendant was bound by counsel's continuances, requested because heavy caseload had impeded counsel's preparedness for trial, despite defendant's refusal to waive time on the record and demands to court to be tried); *State v. LeFlore*, 308 N.W.2d 39 (Iowa 1981) (determining that statutory right to speedy trial is not personal; upholding counsel's continuance and waiver of

defendant's statutory right to speedy trial on ground that counsel was unprepared for trial, despite defendant's refusal to sign waiver); *State v. Ward*, 227 Kan. 663, 608 P.2d 1351 (1980) (concluding that matter of trial preparation is strategic and tactical decision; defense counsel's continuances extended statutory period for trial despite defendant's objections); *State v. McBreen*, 54 Ohio St. 2d 315, 376 N.E.2d 593 (1978) (holding that defense counsel had authority to waive statutory time for trial for reasons of trial preparation and that defendant was bound by waiver even though waiver was executed without defendant's consent); *State v. Campbell*, 103 Wash. 2d 1, 691 P.2d 929 (1984) (concluding that defendant could not show prejudice because of defense counsel's continuance over his objections when continuance ensured more effective representation and fair trial). See, also, *State v. Sayers*, 211 Neb. 555, 319 N.W.2d 438 (1982) (citing *Townsend* as example of courts holding that defendant is bound by strategic decisions of defense counsel).

It has been recognized that defense counsel's authority to waive a defendant's statutory right to speedy trial cannot extend to excuse " 'representation [that] is so ineffective that it can be described as a "farce and a sham." . . .' " See *Townsend*, 15 Cal. 3d at 781, 543 P.2d at 624, 126 Cal. Rptr. at 256. The instant case presents no such failure. The continuance extended the statutory period for approximately 2 months in a complex murder trial involving two codefendants. Indeed, McHenry may well have been denied effective assistance of counsel if counsel had proceeded to trial unprepared. See *People v. Carr*, 9 Ill. App. 3d 382, 384, 292 N.E.2d 492, 494 (1972) (stating that "[i]f the court had acceded to defendant's demands [for immediate trial], and had defendant been found guilty, the question would surely have arisen as to whether defendant had been denied the effective assistance of counsel who had stated that he was not prepared to defend"). We determine that defense counsel's request for a continuance in order to prepare for trial waived McHenry's statutory right to a speedy trial despite McHenry's objections to the continuance. Where, as here, the continuance was granted before the expiration of the statutory speedy trial time, the period of continuance was properly excludable under § 29-1207(4)(b), and defense counsel was not ineffective by

failing to assert McHenry's right to a speedy trial or by failing to file a motion for discharge. See *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). We conclude that this claim is without merit.

### (e) Collusion With Prosecutor

McHenry also alleged that his counsel colluded with the prosecution to deny him his right to a speedy trial. However, the records and files show no evidence of collusion. An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. See *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002). This assignment of error is without merit.

### 4. Denial of Evidentiary Hearing and Failure to Appoint Counsel

Finally, because we have determined that the records and files show that all of McHenry's allegations are without merit, the court did not abuse its discretion by denying McHenry an evidentiary hearing, see *State v. Gonzalez-Faguaga*, 266 Neb. 72, 662 N.W.2d 581 (2003), nor did the court abuse its discretion by failing to appoint counsel when the assigned errors contained no justiciable issue of law or fact. *Id.*

### VI. CONCLUSION

We conclude that McHenry's assignments of error are without merit and affirm the judgment of the district court denying postconviction relief.

AFFIRMED.