780 N.W.2d 28 (2010)
279 Neb. 602
STATE of Nebraska, appellee,
v.
Antoine D. YOUNG, appellant.
No. S-09-246.
Supreme Court of Nebraska.
March 26, 2010.
*31 Peder Bartling, of Bartling Law Offices, P.C., L.L.O., for appellant.
Antoine D. Young, pro se.
Jon Bruning, Attorney General, and Stacy M. Foust for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*32 STEPHAN, J.
Antoine D. Young was convicted of first degree murder and use of a deadly weapon in the commission of a felony in the death of Ray S. Webb. Young was sentenced to life imprisonment on the murder conviction and to 40 to 40 years' imprisonment on the weapons conviction, to be served consecutively. In this direct appeal, separate briefs were filed by Young's appellate counsel and by Young pro se.

I. BACKGROUND
On the afternoon of August 25, 2007, Webb was fatally shot while seated behind the steering wheel of a vehicle which was stopped in the drive-through lane of a fast-food restaurant in Omaha, Nebraska. Two witnesses testified that immediately prior to the shooting, they were standing with Young outside a barbershop located across the street from the restaurant. Both witnesses stated that they observed Young cross the street, approach Webb's vehicle, and fire the fatal shots from a handgun. One of these witnesses stated that Young was bald with a full beard and was wearing a white T-shirt, black shorts, a black baseball hat, and tennis shoes at the time of the shooting.
Another witness was a passenger in a vehicle which was stopped in front of Webb's vehicle at the time of the shooting. This witness testified that after hearing what he first thought were fireworks, he turned and saw a bearded man dressed in black standing at the driver's side of Webb's vehicle. This witness again heard noises which he thought were fireworks, and he observed a shiny metallic object in the air in front of the man standing outside Webb's vehicle.
A defense witness testified that as he drove past the restaurant, he heard shots and observed a bearded man dressed in a black hat, a black T-shirt, white shorts, and white tennis shoes approach Webb's vehicle from the rear, fire a black pistol, and then flee from the back of the restaurant. He testified that Young was not the person he observed.
Reginald Clark, a defense witness who had been acquainted with Young since childhood, testified that as he drove past the restaurant, he observed two unidentified men dressed in black walking quickly from the drive-through lane. From a photograph, Clark identified Webb's vehicle as that which he observed in the drive-through lane as he drove past. Clark did not recognize the men he observed walking away from the restaurant, and he did not hear gunfire or see a weapon. Clark testified that when he stopped at a nearby intersection, another motorist came alongside his vehicle and made a comment which led him to believe that "[s]omething bad" had occurred at the restaurant. Clark testified that he did not observe Young in the vicinity of the restaurant as he drove past.
Another witness, "Ramona," testified that on the afternoon of the shooting, she was leaving the restaurant and observed Webb, with whom she was acquainted, standing outside his vehicle, arguing with an unidentified man and woman. When the argument had concluded, Ramona saw Webb enter his vehicle and saw the man with whom he had been arguing approach another vehicle, retrieve an unidentified object, and place it beneath his shirt. Ramona testified that she then observed the unidentified man approach Webb's vehicle and heard two gunshots, but that she did not see the shooting.
Testifying in his own defense, Young stated that he was not present at the barbershop or the restaurant on the afternoon of August 25, 2007, but instead spent the afternoon at a family gathering at a city park located approximately 4 miles from the restaurant. Two persons testified *33 that they saw Young at the gathering, and a third person who attended the gathering testified that he observed Young's vehicle parked nearby. In response to a question during his cross-examination, Young testified that he was successful and did well in college. The prosecutor impeached this testimony using a transcript showing that Young had failed most of his college courses.
During the jury instruction conference, there was no discussion of an alibi instruction. Approximately 5 minutes after the instructions were given and the case was submitted to the jury, the trial judge reconvened the jury in the presence of Young and counsel and stated that he had forgotten to give an alibi instruction. The judge then instructed the jury as follows: "At issue in this case is whether [Young] was present at the time and place of the crime. The State must prove that [Young] was present during the time and place of the crime." Outside the presence of the jury, Young's counsel objected on the ground that the instruction should have stated that the State's burden of proof was "beyond a reasonable doubt." The prosecutor objected on grounds that the alibi instruction was given after closing arguments and was unnecessary. The court overruled both objections.
The jury returned guilty verdicts, and the court accepted the verdicts and adjudged Young guilty on both counts. After he was sentenced and his motion for new trial was overruled, Young perfected this timely appeal. His appellate counsel is not the same attorney who represented him at trial.

II. ASSIGNMENTS OF ERROR
The sole assignment of error in the brief filed by Young's appellate counsel is that Young received ineffective assistance of counsel at trial. Young argues specifically in that brief that his trial counsel
(1) failed to offer any evidence whatsoever from three critical exculpatory witnesses, the identity of which counsel was aware prior to trial, that Young was not the person who committed the homicide, (2) failed to elicit evidence regarding Young's lack of motive to kill Webb, (3) failed to develop fully Young's alibi defense, (4) failed to tender an alibi instruction during the instruction conference, (5) failed to elicit testimony from [Young's brother], (6) failed to elicit corroborative hearsay testimony from ... Clark, and (7) failed to prepare Young properly to testify.[1]
Young also submitted a pro se brief, in which he argued that (1) the prosecution failed to establish venue, (2) the prosecutor made improper remarks during closing argument, (3) the trial judge erred in instructing the jury, (4) the trial judge failed to properly accept the jury's guilty plea and adjudge Young guilty of the crimes charged, and (5) his trial counsel was ineffective.

III. STANDARD OF REVIEW
A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question.[2]

IV. ANALYSIS

1. ERROR ASSIGNED BY APPELLATE COUNSEL
Under Nebraska law, in order to raise the issue of ineffective assistance of *34 trial counsel where appellate counsel is different from trial counsel, a defendant must raise on direct appeal any issue of ineffective assistance of trial counsel which is known to the defendant or is apparent from the record, or the issue will be procedurally barred on postconviction review.[3] Our rule differs from that announced by the U.S. Supreme Court in Massaro v. United States,[4] which permits an ineffective assistance of counsel claim to be brought in a collateral postconviction proceeding regardless of whether it was raised on direct appeal. This court has not adopted the federal rule, noting that, pursuant to Massaro v. United States, it is not a constitutional requirement.[5]
But the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. In most instances, it cannot, because the trial record reviewed on appeal is "devoted to issues of guilt or innocence" and usually "will not disclose the facts necessary to decide either prong of the Strickland [v. Washington[6]] analysis."[7] We have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit[8] or in the rare case where trial counsel's error was "so egregious and resulted in such a high level of prejudice [that] no tactic or strategy can overcome the effect of the error, which effect was a fundamentally unfair trial."[9]
With these principles in mind, we turn to the ineffective assistance claims which Young, through his appellate counsel, has asserted on direct appeal. To prevail on a claim of ineffective assistance of counsel under Strickland v. Washington, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[10]

(a) Evidence of Third-Party Guilt
The record reflects that during pretrial discovery, Young's trial counsel learned that Omaha police had received information from an incarcerated person. This person reported that he was told by his cellmate that a third person had admitted to killing Webb. Trial counsel also discovered that police had been told by Ramona that she "believed" the same third person killed Webb, because she observed someone who "might have matched [the third person's] description leaving the scene." The record also indicates that Webb's widow initially made a statement to police implicating the same third person in the murder, but later told police she believed Young was responsible. When police questioned the third person, he denied involvement, explained his whereabouts *35 on the day of the shooting, and passed a polygraph examination.
The record reflects that Young's counsel attempted to introduce the hearsay testimony regarding the third person's alleged admission of involvement in Webb's murder, arguing that the evidence should be received under Holmes v. South Carolina.[11] The district court rejected this theory. Young now argues that trial counsel's theory that the hearsay was admissible under Holmes v. South Carolina was clearly without merit and contends that trial counsel should have explored other means of adducing the evidence, including securing the third person's presence at trial. We determine that an evaluation of trial counsel's actions would require an evaluation of trial strategy and of matters not contained in the record. The record is insufficient to review this claim of ineffective assistance of counsel in this direct appeal.[12]
Young also argues that his trial counsel was ineffective in failing to elicit testimony from Ramona and Webb's widow regarding the third person's alleged involvement in Webb's murder. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

(b) Motive of Third Party
Young contends that his trial counsel was ineffective in failing to present evidence that someone other than Young had a motive to kill Webb. From our review of the record, we cannot make any meaningful determination of whether such evidence existed or, if it did, whether trial counsel made a reasonable strategic decision not to present it. We thus conclude that the record on direct appeal is not sufficient to adequately review this claim.

(c) Alibi Defense
Although Young and three other defense witnesses testified that Young was at a family gathering 4 miles away from the shooting at the time it occurred, Young argues that his trial counsel was ineffective in failing to call additional witnesses who could have supported his alibi defense. We cannot determine from this record whether there were additional witnesses who could have testified regarding the alibi defense or, if so, whether such testimony would have strengthened or weakened the evidence which was actually presented. We thus conclude that the record on direct appeal is not sufficient to adequately review this claim.

(d) Alibi Instruction
Young claims that his trial counsel was ineffective in failing to request an alibi instruction. An evaluation of trial counsel's actions would require an evaluation of trial strategy and of matters not contained in the record. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

(e) Young's Brother
Young argues that his trial counsel was ineffective in failing to call as a defense witness Young's brother, who is the owner of the barbershop located across the street from the restaurant where the shooting occurred. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

(f) Clark
Young contends that his trial counsel was ineffective in failing to elicit Clark's testimony about a statement made *36 to Clark by an unidentified motorist. The statement related to the details of what the motorist had seen as he drove past the restaurant. We note that counsel attempted to establish the admissibility of this testimony on the theory that the statement made to Clark was an excited utterance, but the court ruled prior to trial that the statement was inadmissible on this basis. Clark did testify that he interpreted the statement as indicating that "[s]omething bad" had just occurred at the restaurant. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

(g) Preparation for Testimony
Finally, Young argues that his trial counsel was ineffective in failing to adequately prepare him to testify. He generally contends that through better preparation, the impeachment resulting from his inconsistent testimony on cross-examination regarding his college grades could have been averted. But on this record, we cannot determine whether or not counsel adequately prepared Young to address this issue, and we note that the impeachment could have been avoided if Young had simply been truthful about his academic performance in response to the prosecutor's initial inquiry. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

2. ERROR ASSIGNED IN PRO SE BRIEF

(a) Venue
In his supplemental pro se brief, Young argues that the State failed to prove venue pursuant to Neb.Rev.Stat. § 29-1301 (Reissue 2008), which provides that except in circumstances not applicable here, "[a]ll criminal cases shall be tried in the county where the offense was committed...." Venue may be proved like any other fact in a criminal case.[13] It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient.[14] The information against Young alleged that the crimes were committed in Douglas County, Nebraska, and Young was tried in the district court for that county. Several witnesses testified that Webb was shot outside an Omaha restaurant. The paramedic who responded and pronounced Webb dead at the scene of the shooting testified that the restaurant was located in Douglas County. Venue was proved.

(b) Acceptance of Verdict
Young also argues as plain error that his sentence is void because the district court did not properly accept the jury's verdict and adjudge him guilty. The record refutes this claim. The jury returned its verdict on the afternoon of January 29, 2009. In a journal entry bearing that date, the court wrote, "Jury resumed deliberations and verdict was reached. Verdict announced with [Young] being present with his [attorney] .... Jury found [Young] guilty of Count Imurder in the first degree, and Count IIuse of a deadly weapon to commit a felony. Verdict accepted." Additionally, in its order of judgment and conviction, filed February 3, 2009, the court wrote:
[T]he jury found [Young] guilty on both counts as charged[.]
....

*37 The verdict of the jury as to these counts is accepted by the Court and judgment is rendered against [Young] in conformity with the verdict of the jury.
IT IS THEREFORE ORDERED that [Young] is adjudged guilty[.]
Young's contention that the district court erred in failing to accept the jury's verdict and adjudge him guilty is without merit.

(c) Prosecutor's Remarks
Young argues plain error with respect to statements made by the prosecutor during closing argument to which no objection was made. Specifically, Young contends that the prosecutor "vouched for the credibility"[15] of various witnesses by noting they had no reason to lie and that the prosecutor improperly noted Young had lied during his testimony.
Plain error will be noted only where an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[16] Consideration of plain error occurs at the discretion of an appellate court.[17] During trial testimony, each of the witnesses referenced in the prosecutor's closing argument testified either directly or indirectly that he or she did not have a relationship with Young or a connection to the murder. Young's testimony regarding his academic success can fairly be characterized as untruthful, given the impeachment evidence adduced. The jury was instructed that statements made by the lawyers were not evidence and that it should not consider statements made by the lawyers that were not supported by the evidence. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[18] Here, there is nothing in the record to suggest that the jury did not follow the court's instruction, that the State made improper comments not supported by the evidence, or that Young was prejudiced in any way. We find no plain error in these portions of the prosecutor's argument.

(d) Jury Instructions
Young also assigns plain error with respect to portions of jury instructions Nos. 1, 7, 8, and 16 to which no objection was made at trial. Young's argument focuses on the fact that the language of the instructions differs slightly from that of the corresponding sections of our pattern jury instructions for criminal cases. Although we have stated that the Nebraska pattern jury instructions are to be used whenever applicable, we have recognized that a failure to follow the pattern jury instructions does not automatically require reversal.[19] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[20] Applying this *38 standard, we find no plain error resulting from the differences between instructions Nos. 1, 7, 8, and 16, and the corresponding pattern instructions.

(e) Ineffective Assistance of Counsel
Young's pro se brief includes claims of ineffective assistance of trial counsel in addition to those asserted in the brief filed by his appellate counsel. First, he contends that his trial counsel was ineffective in failing to investigate or interview any of the witnesses endorsed by the State. But the record reflects that counsel took pretrial depositions of several of the State's endorsed witnesses. This claim is thus refuted by the record and without merit.
Young also contends that his trial counsel was ineffective in failing to object to or otherwise preserve issues regarding venue, acceptance of the verdict, jury instructions, and remarks made by the prosecutor during closing argument. But we have considered these issues under Young's pro se assignments of plain error and concluded that they are without merit. Defense counsel is not ineffective for failing to raise an argument that has no merit[21] or for failing to object to jury instructions that, when read together and taken as a whole, correctly state the law and are not misleading.[22] Thus, we can and do conclude on this record that there is no merit in the pro se ineffective assistance claims which correspond to the pro se plain error assignments.
Finally, Young contends that his trial counsel was ineffective in stipulating to the licensure, education, background, and other foundational requirements for the testimony of the pathologist who performed the autopsy of Webb and testified regarding his findings. But the record reflects that despite the stipulation, the pathologist testified that he was a duly licensed physician specializing in pathology, that he was trained to perform autopsies, and that he had performed approximately 800 forensic autopsies in the preceding 15 years. Young does not assign error with respect to any portion of the pathologist's substantive testimony. Accordingly, the record is sufficient for us to conclude that the offer to stipulate to the pathologist's professional qualifications did not constitute ineffective assistance of counsel.

V. CONCLUSION
For the reasons discussed, we conclude that the record does not permit us to reach any of the ineffective assistance of counsel claims asserted in the brief filed by Young's appellate counsel. However, we do reach all of the claims raised by Young in his pro se brief, including the additional claims of ineffective assistance of trial counsel, and conclude that they are without merit. Accordingly, we affirm the convictions and sentences.
AFFIRMED.
NOTES
[1] Brief for appellant at 15.
[2] State v. Robinson, 278 Neb. 212, 769 N.W.2d 366 (2009); State v. Davis, 276 Neb. 755, 757 N.W.2d 367 (2008).
[3] State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[4] Massaro v. United States, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).
[5] State v. Marshall, 269 Neb. 56, 690 N.W.2d 593 (2005).
[6] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[7] Massaro v. United States, supra note 4, 538 U.S. at 505, 123 S.Ct. 1690.
[8] See, e.g., State v. Thomas, 262 Neb. 985, 637 N.W.2d 632 (2002); State v. Cody, 248 Neb. 683, 539 N.W.2d 18 (1995).
[9] State v. Faust, 265 Neb. 845, 875, 660 N.W.2d 844, 872 (2003), disapproved on other grounds, State v. McCulloch, 274 Neb. 636, 742 N.W.2d 727 (2007).
[10] State v. Sellers, 279 Neb. 220, 777 N.W.2d 779 (2010); State v. Sepulveda, 278 Neb. 972, 775 N.W.2d 40 (2009).
[11] See Holmes v. South Carolina, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).
[12] See State v. Davis, supra note 2.
[13] State v. Freeman, 267 Neb. 737, 677 N.W.2d 164 (2004).
[14] Id.
[15] Pro se supplemental brief for appellant at 9.
[16] State v. Vela, 279 Neb. 94, 777 N.W.2d 266 (2010); State v. Molina, supra note 3.
[17] State v. Vela, supra note 16; State v. Sepulveda, supra note 10.
[18] State v. Daly, 278 Neb. 903, 775 N.W.2d 47 (2009); State v. Archie, 273 Neb. 612, 733 N.W.2d 513 (2007).
[19] State v. Fischer, 272 Neb. 963, 726 N.W.2d 176 (2007); McClure v. Forsman, 266 Neb. 90, 662 N.W.2d 566 (2003).
[20] State v. Schmidt, 276 Neb. 723, 757 N.W.2d 291 (2008); State v. Welch, 275 Neb. 517, 747 N.W.2d 613 (2008).
[21] State v. McHenry, 268 Neb. 219, 682 N.W.2d 212 (2004); State v. Nesbitt, 264 Neb. 612, 650 N.W.2d 766 (2002).
[22] State v. McHenry, supra note 21. See, also, State v. Tucker, 257 Neb. 496, 598 N.W.2d 742 (1999).