IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. FESSLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
JEFFREY S. FESSLER, APPELLANT.

Filed June 4, 2013.   No. A-12-273.

Appeal from the District Court for Holt County: MARK D. KOZISEK, Judge. Affirmed.

Ronald E. Temple, of Fitzgerald, Vetter & Temple, for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Jeffrey S. Fessler challenges his conviction for first degree sexual assault on a child. On appeal, he argues that (1) the trial court erred in admitting evidence of other sexual assaults, (2) the trial court erred in failing to provide a sufficient limiting instruction of witness testimony regarding other sexual assaults, (3) the prosecutor committed misconduct by asking the jurors to place themselves in the role of the victims, and (4) his counsel did not effectively assist him. We affirm the conviction.

## II. BACKGROUND

Fessler is the father of twin girls, S.F. and P.F., who were born in May 2001. He and his wife divorced when the girls were very young, and Fessler was awarded parenting time every other weekend.

During the Christmas holidays in 2009, S.F. informed her cousins that Fessler made her perform oral sex on him. One of the cousins eventually told his mother about the disclosure, and

- 1 -

she informed the twins' grandparents of his remarks. The grandparents reported the information to a child abuse hotline.

## 1. INTERVIEWS AND INVESTIGATION

On March 30, 2010, Kelli Lowe from the Northeast Nebraska Child Advocacy Center (CAC) interviewed S.F. and P.F. During that interview, S.F. disclosed sexual abuse, but P.F. did not. The same day, the Holt County Attorney filed an information charging Fessler with two counts of first degree sexual assault on a child. The information was amended twice in order to narrow the date of the assaults to the time period of March 1 through 31, 2010.

Subsequently, the grandparents arranged for S.F. and P.F. to speak with a pastor. After speaking with the pastor, P.F. returned to the CAC for a second interview with Lowe, at which time she disclosed sexual abuse.

## 2. PRETRIAL MOTIONS AND HEARINGS

Fessler filed several pretrial motions, including a motion to sever the counts, which the State "confessed." The State proceeded first on the charges for sexual assault of S.F., and this appeal deals solely with the alleged errors that occurred in connection with those charges.

In March 2011, Fessler filed a motion for disclosure of the intention to use evidence of other sexual assaults pursuant to Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012). The State "confessed" Fessler's motion, and a hearing was set.

At that hearing, Fessler argued that the court should exclude any evidence of sexual assaults against S.F. outside the date range alleged in the information, March 1 through 31, 2010. Fessler also argued that the court should exclude testimony P.F. might provide about sexual assaults Fessler allegedly inflicted upon her. During the hearing, both S.F. and P.F. testified that Fessler sexually abused them. S.F. and P.F. both stated that Fessler made them perform oral sex on him. S.F. also testified that Fessler touched her vagina. Fessler testified at the hearing, but did not discuss whether or not the sexual assaults occurred.

Based on the testimony, the trial court found "clear and convincing evidence that other sexual assaults occurred." The court also found that the probative value of the testimony substantially outweighed its prejudicial effect. The court deemed evidence of other sexual assaults admissible to any issue on which they were relevant.

Fessler also requested a *Daubert* hearing to determine whether the State's witnesses could present evidence of "child sexual abuse accommodation syndrome," "grooming," and "delayed disclosure [explanatory] testimony." See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The trial court considered the request as a motion in limine and denied the motion with respect to Lowe, the CAC interviewer. The State "confessed" the motion with respect to three other potential witnesses.

Immediately prior to trial, Fessler moved for the State either to designate a "fresh complaint witness" or to prevent witnesses from testifying about statements S.F. and P.F. made in reporting the sexual assaults to them. A "fresh complaint witness" is the first person a sexual assault victim informs of the assault. The court denied Fessler's motion and informed his counsel that he would need to make timely hearsay objections to this testimony at trial if he felt it should be excluded.

### 3. TRIAL TESTIMONY

#### (a) S.F.'s Trial Testimony

At trial, S.F. testified that Fessler is her father and that when she was very young, her parents divorced. She stated that Fessler was awarded parenting time every other weekend.

S.F. testified that she told her cousins that Fessler makes her "suck his penis" when she stays with him. Fessler did not object to this statement at trial. She also testified that what she told her cousins was true and that it happened every time she went to visit Fessler since she was 3 or 4 years old. S.F. explained that Fessler made P.F. perform oral sex on him as well. S.F. provided a detailed account of the sexual abuse that included testimony that Fessler would kiss her "and put his tongue in [her] mouth."

On cross-examination, S.F. testified that Fessler was living with a woman during a portion of the time the abuse was occurring. S.F. testified that she could not remember whether or not the woman was ever present while Fessler was sexually abusing her.

#### (b) P.F.'s Trial Testimony

P.F. also testified that Fessler had required her to perform oral sex on him since she was young. P.F. described the sexual abuse in detail and discussed the consequences of her failure to follow Fessler's instructions. She testified that Fessler also required S.F. to perform oral sex on him. In addition to describing oral sex, P.F. testified that there were other instances where Fessler sexually abused her through vaginal and anal penetration and inappropriate touching. P.F. did not testify to these additional acts in the § 27-414 hearing.

On cross-examination, P.F. testified that the woman who was living with Fessler during part of the time period when he was sexually abusing her was always at work when the abuse occurred. She admitted that she had previously made a statement that the woman saw the abuse and tried to stop it.

#### (c) Trial Testimony of Cousins and Their Mother

The twins' cousins provided testimony that included the statements S.F. made to them around Christmas 2009. Defense counsel did not interpose an objection to these statements. Over a hearsay objection, the trial court allowed the cousins' mother to repeat the statement one of the cousins made to her that S.F. and P.F. told him Fessler "makes them suck on his penis." The trial court instructed the jury that it was to consider this statement solely for the purpose of determining whether or not it was said, not for the truth of its content.

#### (d) Trial Testimony of Grandmother

The grandmother testified that she asked S.F. if Fessler ever did anything that made her feel uncomfortable. She said S.F. told her she did not want to talk about it, but admitted that what she told her cousins was the truth. The grandmother testified that she told S.F. that S.F. had not done anything wrong and that she would not have to go with Fessler alone again.

On cross-examination, defense counsel asked the grandmother how she felt when she heard allegations that the girls had been sexually assaulted. The grandmother responded that she "wanted to kill" Fessler.

Defense counsel cross-examined the grandparents, S.F., and P.F. about the twins' meetings with the pastor. The grandparents both testified that they took S.F. and P.F. to see the pastor because they thought the girls would benefit from speaking with her, but neither testified to the content of the conversation between her and the girls. S.F. testified that she met with the pastor, and that the pastor told her not to be afraid.

P.F. testified that the pastor convinced her to disclose the sexual abuse. She said that after talking with the pastor, she was able to disclose the abuse to Lowe. P.F. testified that the pastor told her that she had not done anything wrong and that Fessler had done "some bad things."

P.F. responded affirmatively to defense counsel's questions as to whether the pastor told P.F. that Fessler had sexually abused her, but on redirect, P.F. stated the reverse--that she had told the pastor that Fessler had sexually abused her. She also testified that the pastor told her about things she had never heard before and used words she had "never heard of before."

## (f) Trial Testimony of Lowe

Lowe testified that she is a forensic interviewer and supervisor at the CAC. Her job is to conduct forensic interviews and supervise other forensic interviewers within the center. Lowe testified that she has "a bachelor's degree in human service counseling and a master's of science and education with an emphasis in social sciences." Lowe was trained as a forensic interviewer and received advanced forensic interview training. She has conducted approximately 1,300 forensic interviews.

Lowe testified that she interviewed both S.F. and P.F. separately. Lowe first interviewed P.F., who disclosed some possible physical abuse by Fessler but denied any sexual abuse. Lowe said that she also interviewed S.F., who had a very difficult time disclosing abuse. She explained that S.F. would tell little pieces and eventually disclose more.

Lowe testified that children generally do not disclose sexual abuse immediately, especially if the perpetrator is a family member.

After Lowe was asked about P.F.'s second interview, defense counsel objected on hearsay grounds. The trial court overruled the objection, but admonished the jury that P.F.'s statements could be considered for only limited purposes.

On cross-examination, defense counsel elicited testimony from Lowe that the reason forensic interviewers seek to be the first individuals to interview children about alleged abuse is because children's memories can be unintentionally tainted if they are interviewed by someone without special training. Lowe also admitted that she was familiar with studies about "false memories in children," but explained that "false memories" were rare.

## (g) Closing Argument

During closing argument, the prosecutor for the State argued that S.F. and P.F. were credible witnesses because children their age could not describe the alleged sexual acts in the way S.F. and P.F. did unless they experienced them. As part of this argument, he directed the jurors to try and remember what it was like to be S.F.'s and P.F.'s age. He then told the jurors to ask themselves whether or not they could imagine any circumstance in which a child that age would know about the acts S.F. and P.F. discussed without having experienced them. The

prosecutor also stated that although the only count being tried was the one involving S.F., P.F. was an equally important witness who had also had the same experiences.

In rebuttal, the defense argued that S.F. and P.F. were not reliable witnesses and suggested that their accounts of the acts had been tainted by interference from the grandparents and the pastor.

The jury convicted Fessler of first degree sexual assault on a child. Fessler moved for a new trial, which the court denied. The court sentenced Fessler to 30 to 40 years' imprisonment and ordered him to register under the Nebraska Sex Offender Registration Act.

## III. ASSIGNMENTS OF ERROR

Fessler argues, condensed and restated, that (1) the trial court erred in denying his motion to exclude other alleged acts of sexual assault, (2) the trial court erred in failing to give an oral or written jury instruction limiting the testimony of P.F., (3) the State committed prosecutorial misconduct by asking the jurors to identify with the alleged victims in its closing argument, and (4) his trial counsel did not effectively assist him.

## IV. ANALYSIS

### 1. MOTION TO PRECLUDE OTHER ACTS OF
### SEXUAL ASSAULT UNDER § 27-414

Fessler alleges that the trial court erred in finding other sexual acts admissible under § 27-414 and in allowing testimony of other sexual acts beyond the scope of the acts discussed at the § 27-414 hearing. Fessler did not properly preserve either of these issues, because he did not object to evidence of his other sexual acts at trial.

A party who fails to make a timely objection to evidence waives the right on appeal to assert prejudicial error concerning the evidence received without objection. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). Neither a defendant's motion in limine nor his renewal of the motion in limine will preserve an issue for appeal when he fails to object at trial when the evidence is introduced. See, *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002) (stating that failure to object to evidence at trial, even though evidence was subject of previous motion to suppress, waives objection and that party will not be heard to complain of alleged error on appeal); *State v. McDaniel*, 17 Neb. App. 725, 771 N.W.2d 173 (2009) (finding that defendant's motions in limine did not preserve issue for appeal even though motions were renewed).

Fessler's attorney did not preserve a claim of error with respect to the district court's ruling on the admissibility of other sexual acts, because he failed to object at trial when the evidence was adduced.

An appellate court, however, always reserves the right to note plain error which would cause a substantial miscarriage of justice or damage the judicial process. See *State v. McHenry*, 250 Neb. 614, 550 N.W.2d 364 (1996). Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999).

The trial court conducted a hearing pursuant to § 27-414, at which time both S.F. and P.F. testified to repeated acts of oral sex. S.F. did not testify at the hearing that Fessler kissed her inappropriately, nor did P.F. testify to acts of vaginal and anal penetration. Although these acts were beyond the scope of the § 27-414 hearing, we find no plain error in their admission into evidence at trial because of their probative value. See *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). We therefore reject this assignment of error.

## 2. FAILURE TO GIVE LIMITING INSTRUCTION ON P.F.'S TESTIMONY

Fessler argues that the trial court erred in failing to give the jury an instruction specifying the limited uses for which it could consider P.F.'s testimony. Neb. Rev. Stat. § 27-105 (Reissue 2008) states that when evidence is admissible for one purpose, but not another purpose, the trial court judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. In this case, Fessler did not request a limiting instruction; therefore, the trial court did not err by not including a limiting instruction.

## 3. PROSECUTOR'S REMARKS DURING CLOSING ARGUMENT

Fessler argues that the State committed prosecutorial misconduct by asking the jurors to put themselves in the place of the victims during closing arguments. Fessler acknowledges that his counsel did not timely object to the statements. A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct. *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997). Fessler never objected or moved for a mistrial on misconduct; therefore, he failed to preserve this error.

## 4. INEFFECTIVE ASSISTANCE OF COUNSEL

Fessler argues that his counsel was ineffective because he (1) failed to object to evidence of prior sexual assaults beyond the scope of the § 27-414 hearing, (2) failed to object to the prosecutor's remarks during closing argument, (3) failed to request a limiting instruction for P.F.'s testimony, (4) elicited hearsay testimony from S.F. regarding the pastor and her relatives, (5) failed to object to hearsay testimony from the girls' cousins and grandmother, (6) elicited testimony from the grandmother that she "wanted to kill" Fessler, (7) failed to object to the hearsay testimony of Lowe, (8) failed to object to Lowe's testimony about "child sexual abuse accommodation syndrome" and elicited such testimony from Lowe, (9) recommended Fessler not take the stand in his own defense, and (10) failed to call as a witness on Fessler's behalf the woman who had lived with him.

We disagree that Fessler's counsel was ineffective for failing to object to S.F's or P.F.'s testimony regarding other evidence of sexual acts or for failing to object during closing arguments. The record is insufficient to address Fessler's remaining claims of ineffective assistance of counsel.

To prevail on a claim of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), Fessler must show that his counsel's performance

was deficient and that this deficient performance actually prejudiced his defense. See *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013). A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). The determining factor is whether the record is sufficient to adequately review the question. *Id*. We have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or where trial counsel's error was "'so egregious and resulted in such a high level of prejudice [that] no tactic or strategy can overcome the effect of the error, which effect was a fundamentally unfair trial.'" *Id*. at 607-08, 780 N.W.2d at 34 (quoting *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003)).

### (a) Failing to Object to Evidence Beyond Scope of § 27-414 Hearing

Fessler argues that his counsel was ineffective for failing to object to evidence of sexual assaults that went beyond the scope of the testimony offered at the prior hearing under § 27-414. In particular, Fessler argues his counsel should have objected to S.F.'s testimony that he kissed her inappropriately and P.F.'s testimony of anal and vaginal penetration. We address each girl's testimony separately.

### *(i) S.F.'s Testimony*

S.F. testified at trial that Fessler put his tongue in her mouth when he kissed her; she did not relay this information at the § 27-414 hearing. This evidence, however, was not subject to § 27-414 because it was intertwined with the charged sexual assault. See, *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012); *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006) (stating evidence of other wrongs that is so integrated with crime charged is not extrinsic).

Prior to § 27-414, which became operative January 1, 2010, evidence of prior bad acts in sexual assault cases was governed by Neb. Rev. Stat. § 27-404(2) (Reissue 2008). Section 27-404(2) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Freemont, supra*. We do not read § 27-414 to change the law regarding acts which are inextricably intertwined to the charged offenses. Because such acts were not considered extrinsic and therefore not subject to § 27-404 before, they are not extrinsic and not subject to § 27-414 now. As a result, even though evidence of prior sexual assaults may be considered prior bad acts, a hearing under § 27-414 is not required if this evidence forms the factual setting of the charged offense and is necessary to present a complete and coherent picture of the facts.

Under the facts of this case, evidence of the manner in which Fessler kissed S.F. forms the factual setting of the sexual assault charge and was necessary to present a complete and coherent picture of S.F.'s weekends with Fessler. Defense counsel was not ineffective in failing to object to this testimony.

### *(ii) P.F.'s Testimony*

P.F. testified at trial that Fessler subjected her to vaginal and anal penetration, but did not relate that information at the § 27-414 hearing. A § 27-414 hearing was not necessary, however,

for P.F.'s testimony to be admissible because Fessler's actions toward her were sufficiently intertwined with the charged offense and therefore were not subject to § 27-414. As previously discussed, evidence that is sufficiently intertwined with the charged sexual assault is not subject to a § 27-414 hearing. See, *State v. Robinson, supra*; *State v. Freemont, supra*.

In this case, the State charged Fessler with committing first degree sexual assault against S.F. The evidence showed, however, that Fessler engaged in a pattern of repeatedly sexually assaulting both S.F. and P.F. P.F. testified that sometimes Fessler would bring both girls into his bedroom and the three of them would be naked. He would sexually assault the girls consecutively, and each would witness the other's assault. Other times each girl would go into Fessler's bedroom alone with him. This practice started when the girls were very young and continued for a number of years. Accordingly, Fessler's actions against P.F. are sufficiently intertwined to the sexual assault charged that they do not require a § 27-414 hearing.

For purposes of determining whether a § 27-414 hearing was necessary, in this case, it does not matter that P.F. testified to actions which constituted other acts of sexual assault than the assault charged. The acts to which P.F. testified help form the context in which the charged assaults occurred and are a part of Fessler's pattern of behavior toward his daughters. P.F.'s testimony was therefore not subject to § 27-414 because it was sufficiently intertwined with the charged assault. Because P.F.'s testimony was admissible, defense counsel was not ineffective for failing to object to it.

### (b) Failing to Object to Prosecutor's Remarks During Closing Argument

Fessler argues that his counsel was ineffective for failing to object to the prosecutor's comment asking the jurors to place themselves in the same age range as S.F. and P.F. Because the prosecutor's comments were not improper, Fessler's counsel did not have a duty to object and therefore was not ineffective for failing to do so.

Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id*. A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id*.

In this case, the prosecutor did not ask the jurors to sympathize with the victims or to place themselves in the role of the victims; rather, the prosecutor asked the jurors to remember the level of knowledge they had when they were the age of the victims. The statement was intended to help the jurors properly evaluate the testimony of a young witness. The comment did not mislead or unduly influence the jurors and therefore did not constitute misconduct. Fessler's counsel had no duty to object, and his failure to do so cannot be considered deficient. Accordingly, this claim of ineffective assistance of counsel is without merit.

## (c) Remaining Claims of Ineffective
## Assistance of Counsel

Fessler's remaining assignments of error regarding ineffective assistance of trial counsel involve trial strategy, and the record is insufficient for us to address those claims.

## V. CONCLUSION

Fessler failed to properly preserve the claims he now asserts as errors. We have reviewed his claim that the trial court erred in admitting evidence of other sexual assaults for plain error and found none. The record is insufficient to review his claims of ineffective assistance of counsel, with the exception of S.F.'s and P.F.'s testimony of prior bad acts and the alleged prosecutorial misconduct. As to these two claims, we determine that his counsel was not ineffective. Accordingly, we affirm the decision of the trial court.

AFFIRMED.