State of Nebraska, appellee, v. William
Joseph Kelly, appellant.
___ N.W.2d ___

Filed June 25, 2013.    No. A-12-218.

1. **Sexual Assault: Words and Phrases.** A person commits first degree sexual assault if he or she subjects another person to sexual penetration without the consent of the victim.
2. **____: ____.** Sexual penetration includes sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes.
3. **Convictions: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence.
4. **Convictions: Evidence: Appeal and Error.** A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.
5. **Verdicts: Appeal and Error.** Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.
6. **Criminal Law: Juries: Appeal and Error.** An appellate court's standard of review for criminal cases requires substantial deference to the factual findings made by the jury.
7. **Sexual Assault: Parent and Child.** A person commits incest if he or she knowingly engages in sexual penetration with any person who falls within the degrees of consanguinity set forth in Neb. Rev. Stat. § 28-702 (Reissue 2008).
8. **____: ____.** Neb. Rev. Stat. § 28-702 (Reissue 2008) includes a parent engaging in sexual penetration with his or her child.
9. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
10. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
11. **Rules of Evidence: Other Acts.** Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under Neb. Evid. R. 414, Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012), the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a balancing under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008), and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (1) the probability that the other offense occurred, (2) the proximity in time and intervening

circumstances of the other offenses, and (3) the similarity of the other acts to the crime charged.

12. ____: ____. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

13. ____: ____. Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2012), does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. This rule includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime.

14. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

15. **Effectiveness of Counsel: Waiver: Appeal and Error.** Although Nebraska law requires that issues of ineffective assistance of counsel be raised on direct appeal or be waived, the fact that they are raised does not necessarily mean they can be resolved.

16. **Effectiveness of Counsel: Records: Appeal and Error.** In most instances, claims of ineffective assistance of counsel cannot be resolved on direct appeal, because the trial record that an appellate court reviews is devoted to issues of guilt or innocence and usually will not disclose the facts necessary to decide whether counsel's performance was deficient or whether such deficient performance prejudiced the defense.

17. ____: ____: ____. A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question.

Appeal from the District Court for Cedar County: Paul J. Vaughan, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

Sievers, Pirtle, and Riedmann, Judges.

Riedmann, Judge.

## I. INTRODUCTION

William Joseph Kelly appeals from the order of the district court for Cedar County convicting him of two counts of first

degree sexual assault and two counts of incest. Kelly argues that the evidence was insufficient to support the convictions, that the district court admitted unfairly prejudicial evidence of prior alleged sexual assaults, and that his trial counsel was ineffective. Finding no merit to Kelly's arguments, we affirm.

## II. BACKGROUND

Kelly was charged by second amended information with two counts of first degree sexual assault and two counts of incest against his daughter, K.K. The first count of sexual assault and first count of incest were alleged to have occurred "[b]etween on or about September 1, 2009 and on or about April 30, 2010 . . . ." The second count of sexual assault and second count of incest were alleged to have occurred "[b]etween on or about March 1, 2010 and on or about April 30, 2010 . . . at [Kelly's] Cedar County residence just before K.K.'s decision to move out of [Kelly's] Cedar County residence . . . ." A jury found Kelly guilty of all four counts.

Prior to trial, the State sought permission to elicit testimony from K.K. that Kelly had been sexually assaulting her over the entire 10-year period leading up to the charged offenses. Kelly's counsel objected, arguing that the evidence of other offenses was more prejudicial than probative, and asked that the court conduct a hearing to determine admissibility under Neb. Evid. R. 414, Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012). The district court determined that the history of the relationship between Kelly and K.K. was intertwined with K.K.'s ability to relate what happened on the dates of the charged offenses and, thus, that the prior sexual assaults were not "other bad acts, per se, that would require a 414 type of hearing."

K.K. is the daughter of Kelly and his ex-wife, Jodi K. Kelly and Jodi divorced when K.K. was 4 years old. Kelly is currently married to Tiffany K., and they have three children together. After Kelly and Jodi's divorce, K.K. initially lived with Jodi in and near Sioux City, Iowa, but when she was 13, she moved in with Kelly and his family in Sioux City. In September 2009, when K.K. was 15, she moved with Kelly and his family to a farmhouse in Cedar County.

K.K. testified that Kelly "had sex with [her] and other forms of it." She remembered that the first time anything sexual happened with Kelly, she was 6 or 7 years old and Kelly made her give him a "hand job." K.K. remembered that the first time she gave Kelly oral sex was when she was 10 or 11 years old and he ejaculated in her mouth. The first time Kelly had sexual intercourse with K.K., she was approximately 13 years old; K.K. testified, "It hurt really bad. A pain I never felt before." K.K. also testified that Kelly had anal sex with her twice.

K.K. testified that these sexual assaults occurred at the family's residences, in Kelly's pickup truck, in Kelly's work truck, and once in a hotel. The frequency of incidents varied over the years, but K.K. testified that she never gave her consent. K.K. testified that she asked Kelly to stop, but that Kelly said he had a problem and could not stop.

K.K. lived in the farmhouse with Kelly and his family from September 2009 until she moved out on March 22, 2010. She testified that Kelly had sex with her at the farmhouse on the futon where she slept on approximately 5 to 10 occasions. He also had sex with her in his bedroom five or six times.

K.K. remembered one particular occasion that Kelly had sex with her. The family was having a party at K.K.'s great-grandparents' house that day. She remembered it was on a weekend but could not remember the exact day. K.K. testified that she and her grandmother went to the party early in the morning, but that K.K. left the party sometime in the afternoon to pick Kelly up from work at a truckstop and took him back to the farmhouse so he could take a shower. Before taking a shower, Kelly took K.K. into his bedroom, performed oral sex on her, and then had sexual intercourse with her. K.K. then took Kelly back to the family party.

K.K. recalled another specific incident that happened at the farmhouse. Early one morning in about the middle of the week prior to March 22, 2010, Kelly woke K.K. up and asked for oral sex. She performed oral sex on him, and he ejaculated in her mouth, but he was more aggressive than usual and seemed upset. Afterward, K.K. felt sick and vomited in her closet. K.K.

moved out of Kelly's house that weekend and moved back in with Jodi.

K.K. testified that Kelly asked her not to tell anyone about the sexual assaults because he would "get in big trouble." However, in the fall of 2010, K.K. told her friend what Kelly was doing to her. K.K.'s friend testified that K.K. told her, "[M]y dad has been raping me." According to K.K.'s friend, K.K. said Kelly had sex with her in her bedroom or anywhere in their house.

On Christmas Day in 2010, K.K. told Jodi that Kelly had been sexually abusing her since she was 5 or 6 years old. The following day, Jodi called the "Department of Human Services" and set up an interview with a child advocacy center.

As part of the interview, K.K. underwent a physical examination. The examination revealed a healed tear in the hymen consistent with blunt force penetration. At trial, the nurse who performed K.K.'s examination testified that an injury such as K.K.'s occurs infrequently and is uncommon. K.K. had never had sex with anyone other than Kelly, but a previous boyfriend had consensually digitally penetrated her. The medical director of the child advocacy center testified that the injury found on K.K. would be something that would be painful and would not be consistent with a nonpainful digital penetration. He stated that digital penetration occurring when a teenage girl is sexually aroused would be "extremely unlikely" to cause the injury found on K.K.

Several witnesses testified on Kelly's behalf, including his wife, Tiffany; his mother, Nancy K.; and his sister, Stacy C. Tiffany, Nancy, Nancy's brother, and Kelly testified that the only parties the family had during the time K.K. lived in the farmhouse were on Sunday, January 10, and Sunday, March 14, 2010. Kelly worked as a truckdriver, and his daily trucking logs were admitted into evidence at trial. The logs indicate that Kelly was off duty all day on January 10 and March 14.

During the cross-examinations of Tiffany, Nancy, and Stacy, the State questioned the witnesses about statements they had made during recorded conversations while visiting Kelly in jail. In voicing his objection to these lines of questioning,

Kelly's attorney admitted that he had been provided copies of the hours of recorded conversations but had not listened to them.

Kelly testified in his own behalf. He testified that K.K. had never picked him up when he got off work. He stated that he arrived at the parties on January 10 and March 14, 2010, with Tiffany and his three younger children. Kelly denied ever sexually assaulting K.K.

On the morning of the final day of trial, Kelly's counsel asked the court to allow him to present testimony from six additional witnesses who would testify as to the dates of the family parties. He was allowed to make an offer of proof that the witnesses would testify that the parties were, in fact, held on Sunday, January 10, and Sunday, March 14, 2010. The court refused to allow the testimony, because it would be unfairly prejudicial to the State and the evidence would be cumulative.

The jury ultimately found Kelly guilty of all four counts. Kelly timely appeals his convictions.

## III. ASSIGNMENTS OF ERROR

Kelly argues that (1) the evidence was insufficient to sustain his convictions, (2) the trial court erred in admitting unfairly prejudicial evidence of prior alleged sexual assaults, and (3) his trial counsel provided ineffective assistance.

## IV. ANALYSIS

### 1. Sufficiency of Evidence

#### (a) First Degree Sexual Assault

[1,2] The State charged Kelly with one count of first degree sexual assault and one count of incest occurring "[b]etween on or about September 1, 2009 and on or about April 30, 2010 . . . ," and a second count of first degree sexual assault and a second count of incest occurring "[b]etween on or about March 1, 2010 and on or about April 30, 2010 . . . ." A person commits first degree sexual assault if he or she subjects another person to sexual penetration without the consent of the victim. Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2008). Sexual penetration includes:

sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes.

Neb. Rev. Stat. § 28-318(6) (Reissue 2008 & Cum. Supp. 2012).

Kelly first contends that the evidence is insufficient to support his convictions for first degree sexual assault. He argues that the State failed to present corroborating evidence and that K.K.'s testimony is not credible. Kelly's argument conflicts with the 1989 enactment of Neb. Rev. Stat. § 29-2028 (Reissue 2008). Since 1989, the State has not been required to corroborate a victim's testimony in cases of first degree sexual assault. See *id*. So, K.K.'s testimony alone is sufficient if believed by the finder of fact.

[3-6] In reviewing a criminal conviction, we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009). A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *Id*. Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id*. And our standard of review for criminal cases requires substantial deference to the factual findings made by the jury. *Id*.

The State was required to prove that Kelly subjected K.K. to sexual penetration without her consent between September 1, 2009, and April 30, 2010, and again between March 1 and April 30, 2010. Kelly and his family moved into the farmhouse in September 2009, and K.K. moved out in March 2010. K.K. testified that Kelly had sex with her on a futon in the farmhouse on more than one occasion. K.K. testified that she never gave her consent to any sexual activities with Kelly.

K.K. recalled one particular incident that occurred on the day of a party at her great-grandparents' house. K.K. could

not remember the exact date but testified that it occurred on a weekend. She remembered going to the party early in the morning with her grandmother but leaving in the afternoon to pick Kelly up from work at a truckstop. Before going back to the party, K.K. and Kelly stopped at the farmhouse, where he performed oral sex on K.K. and then had sexual intercourse with her.

K.K. also testified about another instance the week before she moved out of the farmhouse in which Kelly forced her to perform oral sex on him early in the morning. K.K. testified that this incident occurred "[a]bout middle of the week" prior to Monday, March 22, 2010.

Kelly argues that his work logbooks and truck "GPS" records contradict the two specific incidents about which K.K. testified. Several witnesses testified that the only family parties during this time period were on Sunday, January 10, and Sunday, March 14, 2010. Kelly's work records indicate that he was off duty all day on January 10 and March 14.

However, K.K. testified she remembered only that the party was on a weekend but could not recall the exact date. It was the defense witnesses who placed the parties on January 10 and March 14, 2010. The logbooks and GPS records would corroborate K.K.'s testimony on other dates; for example, on Saturday, January 16, Kelly got off work at 1:45 p.m., and on Saturday, March 13, Kelly finished work at 4:15 p.m. This evidence is sufficient for the jury to have found that the party occurred on a date other than those suggested by Kelly.

Additionally, there was evidence presented from which the jury could have inferred that Tiffany, Nancy, and Stacy used Kelly's logbooks to determine party dates that would directly contradict K.K.'s testimony. Stacy was cross-examined on the following conversation she had while visiting Kelly in jail:

> Stacy: Did mom tell you we found your log books?
> [Kelly]: What?
> Stacy: We found your log books.
> [Kelly]: Yeah, that's what she said. That would take care of a lot of stuff there.
> Stacy: A lot, just a lot, me and Tiff are up to about 2:00 a.m. going through everything and all that so —

[Kelly]: Did you figure out how all of them lines work?

Stacy: Uh-huh. We put it all on the calendar and everything. I know it stinks right now, but it will work out. It will all work out and then you know who's going to have to deal with it.

[Kelly]: Uh-huh.

Stacy admitted on cross-examination that the person who would "have to deal with it" would be K.K. During Tiffany's cross-examination, she was asked whether she created the defense herself about the logs, and she answered, "Yes." On cross-examination of Nancy, the State refreshed her recollection of a recorded conversation between herself and Kelly while Kelly was in jail in which Nancy stated, "[W]e've got a plan," to which Kelly responded, "Well, I hope so."

As to the second specific incident, K.K. testified it happened in approximately the middle of the week before March 22, 2010, in the early morning hours. According to Kelly's log-books, he began work at 7:15 a.m. on Monday, March 15, and was off duty in the early morning hours of Saturday, March 20, and Sunday, March 21. Again, this evidence is sufficient for the jury to have found that the incident occurred on a date other than Wednesday, March 17.

Even without the two specific incidents K.K. recalled, there was sufficient evidence to support the convictions for first degree sexual assault because of K.K.'s testimony that Kelly had nonconsensual sexual penetration with her at the farmhouse on numerous occasions during the time periods in the second amended information. The evidence satisfies the elements of first degree sexual assault. While Kelly denied the allegations, a jury determined otherwise. The conflicts in the evidence are not for us to resolve, and we give substantial deference to the jury's factual findings. We conclude the State presented sufficient evidence to prove the first degree sexual assault convictions beyond a reasonable doubt.

### (b) Incest

[7,8] Kelly also argues the record lacks sufficient evidence to support his convictions for incest. According to Neb. Rev. Stat. § 28-703 (Reissue 2008), a person commits incest if he or

she knowingly engages in sexual penetration with any person who falls within the degrees of consanguinity set forth in Neb. Rev. Stat. § 28-702 (Reissue 2008). Section 28-702 includes a parent engaging in sexual penetration with his or her child.

It is undisputed that Kelly is K.K.'s biological father. This, in addition to the evidence and testimony summarized above, is sufficient to support the incest convictions. Therefore, Kelly's argument is without merit.

## 2. Improperly Admitted Evidence

[9,10] Kelly argues that the trial court erred in allowing K.K. to testify about prior sexual assaults allegedly committed by Kelly or, in the alternative, that the court erred by denying Kelly's request for a hearing pursuant to § 27-414. In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

At the outset, we note that the State argues Kelly failed to properly preserve this issue for appeal because he did not object to this testimony on the basis of § 27-414 at trial. At trial, K.K. began describing an incident she said occurred when she was 6 or 7 years old. Kelly objected, stating, "Your Honor, for the record, I'm going to object as to relevance. We know what he's charged with, the dates that we're charged with. Apparently we're going to go back in history." Although Kelly did not explicitly identify rule 414 as his objection, his reference to going "back in history," combined with the fact that admissibility of this evidence had previously been addressed by the court, is sufficient for us to address this assignment of error.

[11] In relevant part, § 27-414 provides:

> (3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault

under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

[12] Prior to § 27-414, which became operative January 1, 2010, evidence of prior bad acts in sexual assault cases was governed by Neb. Evid. R. 404(2), Neb. Rev. Stat. § 27-404(2) (Reissue 2008), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[13] Section 27-404(2) (Cum. Supp. 2012) does not apply to evidence of a defendant's other crimes or bad acts if the evidence is inextricably intertwined with the charged crime. *State v. Freemont*, 284 Neb. 179, 817 N.W.2d 277 (2012). This rule includes evidence that forms part of the factual setting of the crime, or evidence that is so blended or connected to the charged crime that proof of the charged crime will necessarily require proof of the other crimes or bad acts, or if the other crimes or bad acts are necessary for the prosecution to present a coherent picture of the charged crime. *Id*. The Nebraska Supreme Court has explained:

""""Where evidence of other crimes is "so blended or connected, with the one[s] on trial [so] that proof of one incidentally involves the other[s]; or explains the circumstances; or tends logically to prove any element of the crime charged," it is admissible as an integral part of the immediate context of the crime charged. When the other crimes evidence is so integrated, it is not extrinsic

and therefore not governed by [r]ule 404 . . . . As such, prior conduct that forms the factual setting of the crime is not rendered inadmissible by rule 404. . . . The State is entitled to present a coherent picture of the facts of the crime charged, and evidence of prior conduct that forms an integral part of the crime charged is not rendered inadmissible under rule 404 merely because the acts are criminal in their own right, but have not been charged. . . . A court does not err in finding rule 404 inapplicable and in accepting prior conduct evidence where the prior conduct evidence is so closely intertwined with the charged crime that the evidence completes the story or provides a total picture of the charged crime. . . .'"'"

*State v. Robinson*, 271 Neb. 698, 714, 715 N.W.2d 531, 549 (2006).

We do not read rule 414 to change the law regarding acts which are inextricably intertwined to the charged offenses. Because they were not considered extrinsic and therefore not subject to rule 404 before, they are not extrinsic and not subject to rule 414 now. As a result, even though evidence of prior sexual assaults may be considered prior bad acts, a hearing under rule 414 is not required if this evidence forms the factual setting of the charged offenses and is necessary to present a complete and coherent picture of the facts.

In the present case, we conclude the district court did not abuse its discretion in determining the evidence of prior sexual assaults was inextricably intertwined with the charged offenses. The 10-year history between Kelly and K.K. forms the factual setting of the crimes at issue. Although some of the events to which K.K. testified were more remote in time, they were necessary to present a coherent historical picture of the facts leading up to the charged offenses for the jury. As such, a hearing pursuant to rule 414 was not required.

### 3. Ineffective Assistance of Counsel

Kelly argues his trial counsel was ineffective for (1) failing to request a jury instruction limiting the jury's consideration of the evidence of prior offenses of sexual assault, (2) failing to adequately prepare for trial by listening to the recordings of

Kelly's conversations with visitors at the jail, and (3) failing to endorse additional witnesses who would have corroborated the testimony called into question by jail recordings.

[14-17] To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. See *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). Although Nebraska law requires that issues of ineffective assistance of counsel be raised on direct appeal or be waived, the fact that they are raised does not necessarily mean they can be resolved. See *id*. In most instances, they cannot, because the trial record that an appellate court reviews is "'devoted to issues of guilt or innocence'" and usually "'will not disclose the facts necessary to decide either prong of the . . . analysis.'" *Id*. at 607, 780 N.W.2d at 34. A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. The determining factor is whether the record is sufficient to adequately review the question. *State v. Young, supra*.

### (a) Limiting Jury Instruction

Kelly claims that his trial counsel was ineffective in failing to request a limiting jury instruction. An evaluation of trial counsel's actions would require an evaluation of trial strategy and of matters not contained in the record. We conclude that the record on direct appeal is not sufficient to adequately review this claim.

### (b) Recorded Jail Conversations

Kelly argues that his trial counsel was ineffective in failing to listen to the recorded jail conversations. Because the record does not disclose the contents of the recorded conversations, we cannot determine whether failure of trial counsel to listen to and utilize the conversations at trial prejudiced Kelly's defense. Therefore, we conclude that the record is not sufficient to adequately review this claim.

### (c) Additional Witnesses

Kelly asserts that his trial counsel was ineffective in failing to timely endorse additional witnesses whose testimony would

have rehabilitated the testimony of Tiffany, Nancy, and Stacy which had been impeached. The record on appeal is not sufficient to review this claim, because it does not indicate why the proposed additional witnesses were not included on the original witness list, nor does the record disclose trial counsel's strategy in trial preparation.

## V. CONCLUSION

We find that there was sufficient evidence to sustain the convictions on all four counts. It was not an abuse of discretion for the trial court to determine that evidence of prior sexual assaults by Kelly against K.K. was inextricably intertwined with the charged offenses and deny Kelly's request for a rule 414 hearing. We conclude that the record is not sufficient to review the grounds for Kelly's ineffective assistance of counsel claims.

AFFIRMED.

---

Edwin H. Kuhnel, appellant, v.
BNSF Railway Company,
a corporation, appellee.
___ N.W.2d ___

Filed June 25, 2013.    No. A-12-296.

1. **Jury Instructions: Judgments: Appeal and Error.** Whether jury instructions given by a trial court are correct is a question of law. When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
2. **Appeal and Error.** Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion.
3. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.
4. **Jury Instructions: Pleadings: Evidence.** A trial court, whether requested to do so or not, has a duty to instruct the jury on issues presented by the pleadings and the evidence.
5. **Jury Instructions: Appeal and Error.** All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading,