IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. FOLTZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
BENJAMIN T. FOLTZ, APPELLANT.

Filed March 4, 2014.    No. A-13-747.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed.

Patrick McCormick for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, Chief Judge, and MOORE and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Benjamin T. Foltz appeals his convictions in the district court for Douglas County for attempted sexual assault in the first degree and burglary. He contends that the trial court erred in allowing the State to endorse additional witnesses, in refusing to allow Foltz to show the victim her videotaped police interview to refresh her recollection and impeach her credibility, and in finding that the evidence was sufficient to sustain the convictions. Finding no merit to Foltz' arguments, we affirm.

## BACKGROUND

On May 15, 2012, the State filed an information charging Foltz with count I, attempted sexual assault in the first degree, and count II, burglary. In regard to count I, the information alleged that on October 23 and 24, 2011, Foltz attempted to subject E.R. to sexual penetration without her consent. As to count II, the information alleged that Foltz did forcibly break and enter into a building with intent to commit a felony therein.

On January 31, 2013, the court set the case for bench trial on April 4. On March 11, the State filed a notice to endorse additional witnesses. On April 1, Foltz filed a written objection to the State's notice to endorse, seeking to exclude additional witnesses or, alternatively, to continue the trial to allow Foltz the opportunity to depose the additional witnesses.

A bench trial took place on April 4, 2013. Prior to the start of trial, the court considered Foltz' objection to the State's notice to endorse additional witnesses. The court ultimately granted the State's motion to endorse and denied Foltz' motions.

Following the court's rulings on the endorsement of additional witnesses for the State, the trial began on the charges against Foltz. E.R. testified that on October 23, 2011, she and several friends/acquaintances were "hanging out" and grilling outside her apartment building. They had planned to go to a bar later in the evening.

The friends/acquaintances included Foltz, who used to live across the street from E.R.'s apartment building and whom E.R. had met on two prior occasions. She recalled having one brief conversation with him in the past.

Kevin Lloyd was also present on October 23, 2011. Lloyd was a close friend of E.R.'s, and they had just begun dating at the time. Lloyd lived in the same apartment building as E.R. The building that E.R. and Lloyd lived in was an old house that had been converted into six apartment units. E.R.'s apartment was on the basement floor, and the only entrance to her apartment was from a stairwell on the side of the house. Lloyd's apartment was on the main level of the house, and his apartment could be accessed from the front door of the house or from the side of the house. Others present on the night in question included Lloyd's two roommates and Stephanie Dine and Cody Bogard, both friends of E.R.'s.

After E.R. and the others were done grilling outside, E.R. and Dine were ready to go to the bar. They asked if anyone else wanted to come with them, and Foltz indicated that he did. E.R., Dine, and Foltz walked to the bar together, and the others eventually joined them. E.R. testified that after the rest of the group arrived, she did not have any conversation with Foltz at the bar and did not pay any attention to where he was or what he was doing. E.R. testified that she got extremely drunk at the bar and that around 1 a.m., Dine and Lloyd walked her back to her apartment. E.R. testified that Dine helped her get into bed, and got her some water and something to eat. E.R. testified that she was throwing up and that Dine put a trash can next to her bed.

E.R. testified that Dine then left and that E.R. passed out in her bed. She testified that her next memory is waking up around 4 a.m. with Foltz in her bed. E.R. testified that she was lying on her right side and that Foltz was lying behind her on his right side, facing her back side. She testified that her pants were down by her ankles and that Foltz was touching her breast and was "thrusting" his erect penis between her legs and against her vagina. E.R. testified that he whispered in her ear, "it's okay."

E.R. testified that she did not know who was in her bed at first because he was lying behind her, but she then saw the person's reflection in a mirror on the wall in her bedroom and realized it was Foltz. E.R. testified that she "freaked out" and told Foltz to get out of her bed. She testified that Foltz did not respond immediately, but after a little while, he got out of the bed, put his pants and shoes on, and told her "if it makes you feel any better, nothing really happened."

E.R. testified that she called Lloyd repeatedly until he answered the telephone. She told him what had just happened and asked him to come to her apartment. She also called Dine, who came over and subsequently took E.R. to a hospital, where she was examined and spoke with an Omaha police officer.

Lloyd testified that E.R. got progressively drunk while at the bar on October 23, 2011, and that he and Dine left the bar with E.R. and walked with her back to her apartment. He testified that he left a short time later and went to his own apartment, leaving Dine with E.R.

Lloyd testified that he received a call from E.R. around 5 or 5:30 a.m. He stated that she was frantic and asked him to come to her apartment. When he arrived, E.R. was in a fetal position in her bed and was crying. She told him that Foltz tried to have sex with her.

Lloyd testified that he and Foltz had been friends and that on the night in question, he had told Foltz that he could sleep overnight at his apartment. Lloyd testified that between the time he got back to his apartment after coming home from the bar and E.R.'s call at 5 or 5:30 a.m., he never received a call from Foltz asking to be let in to the apartment or never heard anyone knocking on his door.

Lloyd testified that later in the morning on October 24, 2011, he received a call from Foltz, and that Foltz told him he was very drunk the night before and could not get into Lloyd's apartment because it was locked. Foltz told Lloyd that he wanted a warm place to sleep, so he went to E.R.'s apartment and got in her bed. He further told Lloyd that he got an erection and that E.R. "flipped out" and told him to leave. Foltz told Lloyd that he wanted to talk to E.R., but Lloyd told him E.R. did not want to talk to him.

Bogard testified that he was at the bar with E.R. and the others on the night in question and that he left the bar with E.R., Lloyd, and Dine. He testified that the four of them went to E.R.'s apartment and that he and Lloyd were "hanging out" while Dine was assisting E.R. Bogard stated that Lloyd then left E.R.'s apartment and that he and Dine left together a short while later.

Bogard testified that in the early morning hours on October 24, 2011, Dine received a telephone call from E.R. and she was very upset. Bogard and Dine went to E.R.'s apartment, and Lloyd was there when they arrived. Bogard testified that E.R. was crying and appeared really scared.

Omaha police officer Andrea Wells testified that she was dispatched to the University of Nebraska Medical Center in the early morning hours on October 24, 2011, to interview E.R. about the incident. Wells testified that when she arrived, E.R. was upset and visibly shaken. E.R. told Wells that she had been sleeping and had awakened to find a man in her room and she felt a penis thrusting against her vagina. E.R. identified the man as "Benny," but was not able to provide his last name at that time.

Omaha police officer Jeffrey Kozeny also testified. He testified that he interviewed E.R. in the course of the investigation into the sexual assault allegation. The interview took place about 3 weeks after the incident and was videotaped. Kozeny testified that the information E.R. gave him during the interview was consistent with the information she had given to Wells at the hospital.

Kozeny testified that he also interviewed Foltz in conducting the investigation. Kozeny testified that Foltz told him that on the night in question, he entered E.R.'s apartment because he

needed a place to sleep and was unable to get into his friend's apartment. Foltz told Kozeny that he did not have permission to enter E.R.'s apartment, but later in the conversation, he indicated that E.R. had told him he should come by and see her apartment sometime.

Kozeny testified that Foltz admitted to being in bed with E.R. and said he was "grinding" on her, which Kozeny described as a sexual movement. Foltz told him there was physical contact between the two of them and that E.R.'s body was moving as well as his, but he could not remember if E.R. was awake or not. Foltz stated that after E.R. told him to leave, he called a female friend and went to her home to sleep the rest of the night or morning.

At the end of the State's case, Foltz motioned for a directed verdict, which the court denied. Foltz subsequently called Kozeny as a witness on behalf of the defense. Kozeny testified that he recalled E.R. telling him that she left the bar with Dine and Lloyd and that the rest of the group was going to meet back at her house later when they left the bar. He also testified that he recalled E.R. telling him that after she got back to her apartment, she did not remember much of what happened and did not remember Dine helping her into bed and putting a trash can next to her bed. Kozeny testified that he did not recall asking her if she knew what hospital she went to and did not recall her response that she did not remember what hospital. He did remember asking her if she was still drunk when she woke up, and she responded that she was and that she even threw up at the hospital.

At the conclusion of trial, the trial court found Foltz guilty on both charges. Subsequently, the trial court sentenced Foltz to a term of 3 years' traditional supervised probation on each count, with the terms of probation to be served concurrently.

## ASSIGNMENTS OF ERROR

Foltz assigns that the trial court erred in (1) allowing the State to endorse additional witnesses, (2) refusing to allow defense counsel to play the videotape of E.R.'s interview with Kozeny and in overruling defense counsel's offer of proof, (3) denying his motion for directed verdict, (4) finding that the evidence was sufficient to sustain convictions on both charges, and (5) constructively amending the information, thereby convicting Foltz of uncharged offenses.

## STANDARD OF REVIEW

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Osborne*, 286 Neb. 154, 835 N.W.2d 664 (2013). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *Id.*

## ANALYSIS

*Endorsement of Additional Witnesses.*

Foltz first assigns that the trial court erred in allowing the State to endorse additional witnesses less than 30 days before trial. Foltz' objection to the State's motion to endorse additional witnesses was taken up on the day of trial, April 4, 2013. The State informed the court that a copy of the motion to endorse additional witnesses was sent to Foltz on March 11. The

State also indicated that of the seven requested endorsements, only three of them would be called to testify, namely Wells, Bogard, and Lloyd.

Whether to permit the names of additional witnesses to be endorsed upon the information after the information has been filed is within the discretion of the trial court. *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Neb. Rev. Stat. § 29-1602 (Reissue 2008) provides:

> All informations shall be filed in the court having jurisdiction of the offense specified therein, by the prosecuting attorney of the proper county as informant. The prosecuting attorney shall subscribe his or her name thereto and endorse thereon the names of the witnesses known to him or her at the time of filing. After the information has been filed, the prosecuting attorney shall endorse on the information the names of such other witnesses as shall then be known to him or her as the court in its discretion may prescribe, except that if a notice of aggravation is contained in the information as provided in section 29-1603, the prosecuting attorney may endorse additional witnesses at any time up to and including the thirtieth day prior to the trial of guilt.

The purpose of § 29-1602 is to notify the defendant as to witnesses who may testify against the defendant and give the defendant an opportunity to investigate them. *State v. Molina, supra.*

A trial court may allow witnesses to be endorsed after an information is filed when doing so does not prejudice the defendant in the preparation of his or her defense. *State v. Molina, supra.*

Prior to trial, when the trial court considered Foltz' objection to the State's notice to endorse additional witnesses, the State argued that Foltz had been put on notice that all three individuals could likely be called as witnesses. The State informed the court that Wells had written a report regarding her interview with E.R. at the hospital and that the report was provided to Foltz in September 2012, 7 months before trial. Foltz did not dispute this. Wells was also mentioned in Kozeny's "affidavit of complaining witness" as the officer who spoke with E.R. at the hospital.

In regard to the other two witnesses, Bogard and Lloyd, the State argued that they were listed in the initial police reports, which were also provided to Foltz in September 2012. The State also claimed that the police reports contained Bogard's address and telephone number. As to Lloyd, in August 2012, defense counsel filed a motion to depose Lloyd and the motion was granted and a date was set for the deposition. Defense counsel also had a subpoena issued for Lloyd to appear at an October 17, 2012, court date. Accordingly, Foltz was aware of Bogard and Lloyd as possible witnesses.

Foltz has not shown how the endorsement of the three witnesses who were known to him for months before trial prejudiced him in the preparation of his defense.

In addition, Foltz had notice of the State's motion to endorse additional witnesses 3 weeks before trial was scheduled to begin. Foltz had this time to contact the additional witnesses and interview them. There is no evidence that he made any attempt to do so. It was not until 3 days before trial that Foltz filed an objection to the State's notice to endorse, seeking to exclude

additional witnesses or, alternatively, to continue the trial to allow Foltz the opportunity to depose the additional witnesses. This assignment of error is without merit.

*Videotaped Interview of E.R.*

Foltz assigns that the trial court erred in refusing to allow Foltz' counsel to play the videotape of E.R.'s interview with Kozeny and in overruling Foltz' offer of proof. Foltz wanted to play the videotape to refresh E.R.'s recollection in regard to various statements she made to Kozeny in the interview, because at trial she indicated that she could not remember what she said to Kozeny. Certain statements she made to Kozeny in the interview conflicted with her testimony at trial.

Specifically, E.R. testified that she had never invited Foltz to her apartment at any time and that she did not recall a plan for the group of people she was with at the bar to meet back at her apartment after leaving the bar. She subsequently was asked whether she recalled telling Kozeny in the interview that the group she had been with at the bar, including Foltz, were going to meet back at her house. E.R. responded that she did not remember saying that.

E.R. also testified that she remembered Dine putting her in bed and that she was throwing up in a trash can next to her bed. When asked whether she recalled telling Kozeny during the interview that she did not remember Dine helping her into bed and putting a trash can next to her bed, she indicated she did not remember what she told Kozeny.

Finally, E.R. testified that she went to the hospital shortly after the assault, and specifically stated that she went to the University of Nebraska Medical Center. On cross-examination, E.R. was asked if she recalled telling Kozeny that she could not remember what hospital she went to. E.R. testified that she did not remember what she said to Kozeny.

Foltz' counsel sought to play the videotape, after E.R.'s responses that she could not remember what she told Kozeny in the interview, to refresh her recollection with regard to the interview. The State objected on the basis of lack of foundation and improper refreshment, and the trial court sustained the State's objections.

Following the objections, Foltz' counsel attempted to preserve the evidence by making an offer of proof. Counsel asked the trial court to mark the videotape as an exhibit, and he offered it into evidence "as offer of proof of the answers to the questions asked of [E.R.] that she couldn't remember." The trial court overruled the offer of proof.

Foltz argues it was error for the court to deny playing the videotape of E.R.'s prior statements to refresh her recollection and to impeach her credibility with her prior inconsistent statements. However, he does not contend how the court's refusal to play the videotape was prejudicial. The record shows it was not.

Foltz acknowledges that Kozeny's testimony brought out the same information that defense counsel had sought to elicit from E.R., particularly that E.R. told Kozeny that Foltz was expected to arrive at her apartment after the bar and that E.R. was so drunk that she really did not know what happened after she got home from the bar. Specifically, Kozeny testified that he recalled E.R. telling him that she left the bar with Dine and Lloyd and that the rest of the group was going to meet back at her house later when they left the bar. He also testified that he recalled E.R. telling him that after she got back to her apartment, she did not remember much of what happened, and that she did not remember Dine helping her into bed and putting a trash can next

to her bed. Kozeny testified that he did not recall asking her if she knew what hospital she went to and did not recall her response that she did not remember what hospital. He did remember asking her if she was still drunk when she woke up and her responding that she was and that she even threw up at the hospital.

Kozeny's testimony demonstrates that Foltz was not prejudiced by the court's failing to allow him to refresh E.R.'s recollection at trial and impeach her credibility with inconsistent statements. Kozeny's testimony served the same purpose as if the videotape had been played--that is, it showed that some of E.R.'s testimony at trial about the night in question was inconsistent with the statements she made to Kozeny, thereby bringing E.R.'s credibility and account of the events into question.

Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Floyd*, 277 Neb. 502, 763 N.W.2d 91 (2009). We cannot conclude that the trial court abused its discretion in refusing to allow Foltz' counsel to play the videotape of E.R.'s interview with Kozeny and in overruling Foltz' offer of proof.

*Failure to Direct a Verdict/*
*Sufficiency of Evidence.*

Foltz assigns that the trial court erred in overruling his motion for directed verdict. Foltz moved for a directed verdict at the close of the State's case. The trial court overruled the motion, and thereafter, Foltz called Kozeny as a witness in his case in chief. The defense rested and did not renew its motion for directed verdict.

A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution, and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction. *State v. Branch*, 277 Neb. 738, 764 N.W.2d 867 (2009).

Because Foltz introduced evidence, he has waived the right to challenge the court's ruling on his motion for directed verdict. However, he may challenge the sufficiency of the evidence for his convictions.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Osborne*, 286 Neb. 154, 835 N.W.2d 664 (2013). In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. *Id.*

Foltz was charged with attempted sexual assault in the first degree, pursuant to Neb. Rev. Stat. § 28-319(1)(a) (Reissue 2008). Section 28-319(1)(a) provides that a person commits first degree sexual assault when he subjects another person to sexual penetration without the consent of the victim. The term "without consent," defined in Neb. Rev. Stat. § 28-318(8) (Cum. Supp. 2012), means:

(a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor.

Pursuant to Neb. Rev. Stat. § 28-201(1)(b) (Cum. Supp. 2010), a person is guilty of criminal attempt if he "[i]ntentionally engages in conduct which . . . constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime."

Foltz argues that the evidence was insufficient to sustain a conviction of attempted first degree sexual assault because it failed to show that Foltz used physical force to overcome E.R.'s resistance after she communicated her lack of consent and failed to prove that Foltz took a substantial step toward penetration after E.R. communicated her lack of consent. He argues that the evidence shows that as soon as E.R. expressed a lack of consent by telling Foltz to get out of her bed, he did so. As such, he contends that there is no evidence that he attempted to overcome E.R.'s resistance.

Foltz argues that the use of force is the only way to commit sexual assault without consent. Based on the statutory meaning of "without consent," his argument is misplaced. As previously set forth, "without consent," pursuant to § 28-318(8)(a)(i), includes the meaning that "[t]he victim was compelled to submit due to the use of force or threat of force or coercion." The terms "force" or "threat of force" are further defined in § 28-318(9) as "the use of physical force which overcomes the victim's resistance." Section 28-318(9) only relates to § 28-318(8)(a)(i), which is not applicable in the present case. Foltz is correct in his claim that there is no evidence that Foltz used physical force in attempting to overcome E.R.'s resistance.

However, "without consent" can also mean that the victim expressed a lack of consent through words, which is what happened in this case. This meaning does not require a finding that the perpetrator attempted to overcome the victim's resistance or lack of consent.

The State was required to prove that Foltz attempted to subject E.R. to sexual penetration without her consent. See § 28-319. E.R. testified that she was asleep in her bed and woke up with her pants pulled down to her ankles and Foltz thrusting his erect penis between her legs and against her vagina, while fondling her breast. When she realized what was happening, she expressed her lack of consent by telling Foltz to get out of her bed. She expressed her lack of consent through words, which is sufficient under § 28-318(8)(a)(ii).

There was also evidence of a "substantial step" intended to culminate in his commission of the crime of first degree sexual assault in that Foltz was thrusting his erect penis against E.R.'s vagina. The State did not need to prove a substantial step toward penetration after E.R. expressed her lack of consent, as Foltz contends.

A conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Kelly*, 20 Neb. App. 871, 835 N.W.2d 79 (2013). Only where evidence lacks sufficient probative value as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id.*

The evidence was sufficient to show that Foltz attempted to subject E.R. to sexual penetration without her consent, in violation of § 28-319(1)(a). E.R.'s testimony alone satisfies

the elements of attempted first degree sexual assault to sustain a conviction. The State did not have to prove that Foltz attempted to overcome E.R.'s resistance after she expressed her lack of consent.

Foltz also argues that the evidence was insufficient to sustain a conviction on the burglary charge. A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate with intent to commit any felony. Neb. Rev. Stat. § 28-507 (Reissue 2008).

Foltz argues that because the State failed to present evidence to sustain a conviction for attempted first degree sexual assault, it follows that the evidence is insufficient to sustain a conviction for burglary because there was no evidence that he entered E.R.'s apartment with the intent to commit a felony. Having determined that the evidence is sufficient to sustain a conviction for attempted first degree sexual assault, this argument is without merit.

Foltz also contends that the evidence was insufficient to convict him on the burglary charge because there was evidence that Foltz had reason to believe he was invited to E.R.'s apartment. Foltz bases his argument on Kozeny's testimony that he recalled E.R. telling him that she left the bar with Dine and Lloyd and that the rest of the group, which would include Foltz, was going to meet back at her house later when they left the bar. However, there was also evidence that Foltz was not invited to E.R.'s apartment. E.R. testified that she had never invited Foltz to her apartment. In addition, Foltz told Kozeny that he entered E.R.'s apartment because he needed a place to sleep and was unable to get into his friend's apartment. Foltz told Kozeny that he did not have permission to enter E.R.'s apartment, but later in the conversation, Foltz indicated that E.R. had told him he should come by and see her apartment sometime.

Foltz is essentially asking us to reweigh the evidence, which we will not do. See *State v. Osborne*, 286 Neb. 154, 835 N.W.2d 664 (2013) (in reviewing criminal conviction, appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, or reweigh evidence). The trial court, as the trier of fact, resolved the issue in favor of the State, finding that Foltz did not have permission to enter E.R.'s apartment.

Although the evidence indicates that the door to E.R.'s apartment was unlocked, evidence of any act of physical force, however slight, by which the obstruction to entering is removed is sufficient to prove a breaking. The opening of a closed door is a "breaking" within the definition of burglary. *State v. Tyrrell*, 234 Neb. 901, 453 N.W.2d 104 (1990).

The trial court also found that Foltz' purpose of entering E.R.'s apartment was shown by his conduct thereafter. Stated differently, his actions after he entered the apartment indicate that his intent when he entered the apartment was to commit first degree sexual assault. Based on the evidence, viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Osborne, supra.*

Foltz' arguments in regard to sufficiency of the evidence on both charges are without merit.

*Constructive Amendment of Information.*

Finally, Foltz argues that the trial court constructively amended the information, resulting in a conviction on a charge that he was not prepared to defend. In regard to the attempted first degree sexual assault charge, Foltz contends that he came to trial with the expectation that he would be defending a charge that he attempted to force penetration without consent by

attempting to overcome E.R.'s resistance. He alleges that the case the State put on at trial was insufficient for a conviction on this basis, yet he was convicted.

Foltz makes the same argument that he made pursuant to his insufficiency of the evidence assignment of error. He argues that the use of force is the only way to commit sexual assault without consent. However, as previously discussed, "without consent" may also occur where the victim expressed a lack of consent through words, which is what the evidence showed. See § 28-318(8). The information alleged that Foltz "attempt[ed] to subject [E.R.] to sexual penetration, without the consent of [E.R.]" It did not state a specific meaning of "without consent," and it did not contain "use of force" language. Accordingly, Foltz was convicted of the crimes with which he was charged in the information. His assignment of error is without merit.

## CONCLUSION

We conclude that the trial court did not err in allowing the State to endorse additional witnesses, in refusing to allow Foltz' counsel to play E.R.'s videotaped police interview to refresh her recollection and impeach her credibility, and in finding that the evidence was sufficient to sustain the convictions. Having found no merit to any of Foltz' assignments of error, we affirm his convictions.

AFFIRMED.