Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/09/2022 09:06 AM CDT

**State of Nebraska, appellee, v.
Albert Russell Jaso, appellant.**
___ N.W.2d ___

Filed August 2, 2022.    No. A-21-481.

1.  **Effectiveness of Counsel: Constitutional Law: Statutes: Records:
    Appeal and Error.** Whether a claim of ineffective assistance of trial
    counsel can be determined on direct appeal presents a question of law,
    which turns upon the sufficiency of the record to address the claim
    without an evidentiary hearing or whether the claim rests solely on the
    interpretation of a statute or constitutional requirement. An appellate
    court determines as a matter of law whether the record conclusively
    shows that (1) a defense counsel's performance was deficient or (2)
    a defendant was or was not prejudiced by a defense counsel's alleged
    deficient performance.
2.  **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a
    claim of ineffective assistance of counsel, the defendant must show that
    his or her counsel's performance was deficient and that this deficient
    performance actually prejudiced the defendant's defense.
3.  **Effectiveness of Counsel: Records: Appeal and Error.** On direct
    appeal, the resolution of ineffective assistance of counsel claims turns
    upon the sufficiency of the record.
4.  ____: ____: ____. In those cases where the record on direct appeal was
    sufficient to address a claim of ineffective assistance of trial counsel,
    the record itself either affirmatively proved or rebutted the merits of
    the claim. That is, the record established either that trial counsel's per-
    formance was not deficient, that appellant could not establish prejudice,
    or that trial counsel's actions could not be justified as a part of any
    plausible trial strategy.
5.  **Effectiveness of Counsel: Appeal and Error.** It is fundamental to a
    claim of ineffective assistance of counsel based on failure to appeal or
    failure to properly perfect an appeal, that the defendant directed that
    such appeal be filed.

6. \_\_\_\_ : \_\_\_\_. With regard to ineffective assistance of counsel for failing to perfect an appeal, the critical issue is whether a timely appeal from the pretrial order denying absolute discharge would have resulted in a reversal and prevented a subsequent trial and conviction. Only if that question is resolved in the affirmative could the failure to perfect the appeal be deemed prejudicial in the sense that it would have altered the result of the prosecution.

7. **Speedy Trial.** To calculate the deadline for trial under the speedy trial statutes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under Neb. Rev. Stat. § 29-1207(4) (Reissue 2016).

8. \_\_\_\_. For speedy trial purposes, the calculation of excludable time for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends.

9. **Speedy Trial: Attorney and Client.** Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016) excludes the period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel.

10. **Speedy Trial: Good Cause: Motions for Continuance.** The extent to which a defendant has "good cause" for requesting a continuance is of no consequence under Neb. Rev. Stat. § 29-1207(4)(b) (Reissue 2016).

11. **Constitutional Law: Speedy Trial: Appeal and Error.** There is no appellate jurisdiction over a pretrial order denying a motion for discharge on constitutional speedy trial grounds until the case is concluded.

Appeal from the District Court for Dawson County: James E. Doyle IV, Judge. Affirmed.

Brian J. Davis, of Davis Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.
### I. INTRODUCTION
Albert Russell Jaso brings this direct appeal alleging, through new counsel, two claims of ineffective assistance of

trial counsel. For the following reasons, we conclude Jaso cannot show prejudice with regard to either claim.

## II. BACKGROUND

On May 1, 2019, the State filed an information charging Jaso with one count of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1)(a) and (b) (Reissue 2016) (count I) and one count of incest in violation of Neb. Rev. Stat. § 28-703(1) (Reissue 2016) (count II). Additionally, the State alleged that Jaso was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2016) (count III).

Jaso appeared for an arraignment on May 20, 2019, at which time he entered pleas of not guilty to the charges in the information. The matter was set for a jury trial to commence on August 13, with a pretrial conference on July 31. However, trial was delayed by numerous continuances, many of which were granted at Jaso's request.

Eventually, the court convened for a pretrial conference on February 24, 2020, and trial was set for March 10. However, at the February hearing, Jaso's counsel made an oral motion to continue the March 10 trial date to the April trial term. At the start of the hearing, Jaso had informed the court that he was transported from the Nebraska State Penitentiary (NSP) without his medication and that he felt "not right all the way." The court engaged in a lengthy colloquy with Jaso in order to assess his mental state and advise him that his counsel's request for a continuance would result in further delay of his trial which would not be included in the speedy trial calculation. Jaso confirmed that there were two reasons for the request: (1) to discuss the possibility of filing a motion for independent DNA testing and (2) to give further consideration to a plea offer that the State had presented. Satisfied that Jaso understood the nature of his request, the court granted the continuance and rescheduled trial for April 7, with a pretrial conference on March 13.

Jaso refused to be transported for the March 13, 2020, pretrial conference, and his counsel made an oral motion to continue the April 7 trial date to the June trial term. The court granted that motion and rescheduled trial for June 9, with a pretrial conference on May 14. Jaso appeared via videoconference at the May 14 pretrial conference, and his counsel made an oral motion for "dismissal under grounds of speedy trial." The court granted leave for Jaso to supplement his oral motion with a written motion for discharge and set the matter for hearing on July 10. Although the evidence adduced at the July 10 hearing will be discussed in more detail below, the court ultimately denied Jaso's motion for discharge via written order entered on August 31.

After a number of additional delays, and the withdrawal of Jaso's first trial counsel, the court eventually convened for a pretrial conference on March 17, 2021. At that hearing, Jaso's second trial counsel informed the court that an agreement had been struck, under which the State filed an amended information dismissing counts I and III and Jaso entered a written waiver of his right to a jury trial. The parties also agreed to a written stipulation of facts establishing the elements of count II, pursuant to which Jaso's counsel expected a finding of guilt on that count. The State further agreed to "recommend a term of incarceration [of] no more than ten years."

The court confirmed the substance and effect of the agreement with Jaso, explicitly advising him that count II is punishable by a maximum of 20 years' imprisonment. The court recited the single charge in the amended information, to which Jaso pled not guilty, and the case was submitted to the court pursuant to the stipulated facts contained in exhibit 4. Upon reviewing exhibit 4, the court found Jaso guilty on count II of the amended information. The court ordered that a presentence investigation report be prepared, and it set the case for sentencing on May 14, 2021.

At the May 14, 2021, sentencing hearing, pursuant to the agreement discussed above, the State recommended a term

of incarceration of not more than 10 years. In consideration of the statutory factors and the information in the presentence investigation report, the court sentenced Jaso to 12 to 16 years' incarceration with credit for 121 days served and ordered Jaso to register as a sex offender for life. Thereafter, Jaso's second trial counsel was granted leave to withdraw and Jaso brought this appeal through new counsel.

## III. ASSIGNMENTS OF ERROR

Jaso assigns, restated, that his trial counsel was ineffective for (1) failing to perfect an appeal from the district court's order denying Jaso's motion for discharge on speedy trial grounds and (2) promising a maximum sentence to induce Jaso to enter into a plea agreement.

## IV. STANDARD OF REVIEW

[1] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. Ineffective Assistance of Counsel for Failing to Perfect Appeal

Jaso first assigns that his first trial counsel was ineffective for failing to "preserve" the issue of Jaso's right to a speedy trial for appeal. Brief for appellant at 19. The State argues that this argument fails because the district court's denial of Jaso's motion for discharge was final and appealable, such that "[u]nless the [order] is timely appealed, the decision of

the district court becomes final, and all parties are bound by it." Brief for appellee at 4. Thus, because Jaso failed to file a timely appeal of the district court's ruling on his motion for discharge, the State argues, there was no way for that issue to be "'preserved'" for a later appeal. *Id*. We agree.

However, in his reply brief, Jaso counters that, although he used the term "preserve" in his first assignment of error, the substance of his argument is actually that "[t]he failure of trial counsel *to perfect* that appeal has prejudiced [Jaso] by waiving his opportunity to make a case on the merits with respect to any violation of his right to a speedy trial." Reply brief for appellant at 5 (emphasis supplied). Indeed, in his original brief, Jaso cited to *State v. Johnson*, 243 Neb. 758, 502 N.W.2d 477 (1993), and *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000), as precedent for establishing that trial counsel may be ineffective for failing to properly perfect an appeal when the defendant directed such an appeal to be filed. Jaso then argues as follows: "The record in this case establishes that [Jaso] and his counsel argued extensively about his right to a speedy trial being violated . . . indicating that [Jaso] had directed that his right to challenge the violation of statutory and constitutional rights be preserved. But that appeal was not perfected." Brief for appellant at 22. Thus, giving Jaso the benefit of the doubt, we address his first assignment of error as the failure of trial counsel to properly perfect an appeal of the district court's denial of Jaso's motion for discharge on speedy trial grounds.

[2] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Jaso argues:

> Instead of relying on the 2-pronged standard stated in *Strickland v. Washington* . . . this court must rely on the

companion case of *United States v. Cronic*, [466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)], which held that certain deficient conduct by counsel will be presumed prejudicial . . . .

Brief for appellant at 22 (citing *State v. Trotter, supra*). However, the Nebraska Supreme Court explicitly rejected this argument in *State v. Meers*, 267 Neb. 27, 671 N.W.2d 234 (2003).

In *Meers*, as in the present case, the appellant claimed that trial counsel was ineffective for failing to perfect an appeal from a pretrial denial of his motion for discharge on speedy trial grounds. The court distinguished this scenario from *Trotter* and other cases where there was a failure to perfect an appeal *after* a trial and conviction. Where the failure to perfect an appeal after trial and conviction completely foreclosed appellate review of the case, "[t]he absence of a timely appeal from the pretrial order denying discharge on speedy trial grounds foreclosed appellate review on that single issue . . . but it did not affect the right to seek appellate review of other issues." *State v. Meers*, 267 Neb. at 31, 671 N.W.2d at 238. Thus, rather than extending the presumption of prejudice discussed in *Trotter*, our Supreme Court concluded that the scenario presented in *Meers*, which is the same as in the present case, should be analyzed under the *Strickland* test for determining the effectiveness of counsel.

[3,4] On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. *State v. Filholm, supra*. In those cases where the record on direct appeal was sufficient to address a claim of ineffective assistance of trial counsel, the record itself either affirmatively proved or rebutted the merits of the claim. *Id.* That is, the record established either that trial counsel's performance was not deficient, that appellant could not establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

[5] It is fundamental to a claim of ineffective assistance of counsel based on failure to appeal or failure to properly

perfect an appeal that the defendant directed that such appeal be filed. *State v. Trotter*, 259 Neb. 212, 609 N.W.2d 33 (2000). As previously quoted, Jaso argues that his direction to file an appeal is "indicat[ed]" by the fact that he argued extensively with counsel about whether his right to a speedy trial had been violated. However, it is not clear where in the record Jaso finds support for the assertion that Jaso argued extensively with trial counsel about this issue. Moreover, even if such argument did occur, it would not necessarily indicate that Jaso directed an appeal to be filed.

[6] Nevertheless, even if Jaso had timely directed trial counsel to file an appeal, Jaso cannot show prejudice from counsel's failure to do so. In *State v. Meers, supra*, the court determined that "the critical issue is whether a timely appeal from the pretrial order denying absolute discharge would have resulted in a reversal and prevented a subsequent trial and conviction." *State v. Meers*, 267 Neb. at 32, 671 N.W.2d at 238. "Only if that question is resolved in the affirmative could the failure to perfect the appeal be deemed prejudicial in the sense that it would have altered the result of the prosecution." *Id.* See, also, *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016). Thus, we examine whether a timely appeal would have resulted in a reversal of the court's denial of Jaso's motion for discharge.

(a) Statutory Speedy Trial

[7] Under Neb. Rev. Stat. § 29-1207(1) (Reissue 2016), "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." To calculate the deadline for trial under the speedy trial statutes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019). The original information against Jaso was filed on May 1, 2019, so the initial speedy trial deadline

was November 1, 2019. We note that the district court miscalculated the initial speedy trial deadline as October 31, so we adjust its calculation accordingly.

[8] Under § 29-1207(4)(b), a court shall exclude from the speedy trial clock "[t]he period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel." The calculation of excludable time for a continuance begins the day after the continuance is granted and includes the day on which the continuance ends. *State v. Lovvorn, supra*.

In denying Jaso's motion for absolute discharge, the district court determined that 257 days of the delay were attributable to Jaso; thus, prior to filing his motion to dismiss, the speedy trial deadline had been extended to July 14, 2020 (which, as adjusted, would be July 15). In Jaso's calculations and argument in support of his motion to discharge, he acknowledged that 154 days, from August 13, 2019, to January 14, 2020, should be excluded from the speedy trial clock due to continuances he requested. The court, however, excluded 166 days, beginning August 1, 2019, instead, which was the day after the court granted Jaso's oral motion to continue trial from August 1 to September 10. These additional days were properly excluded pursuant to *State v. Lovvorn, supra*.

Jaso contended, however, that the 91-day period from March 10, 2020, to the next scheduled jury trial date of June 9 should not count against him, despite the fact that the continuances were requested by his counsel. He asserted that these continuances were necessitated because personnel at the Department of Correctional Services withheld his medications, resulting in a mental condition which precluded him from effectively participating in his defense. The district court rejected this argument based upon the record before it. Because a determination of whether this time period was properly excluded is determinative of whether Jaso was prejudiced by counsel's failure to appeal the denial of his motion for absolute discharge, we focus our attention here.

The first period of these 91 days occurred during the pre-trial conference on February 24, 2020. The record reveals that on that date, Jaso's counsel requested that the trial be continued from March 10 to April 7 to provide him time to consider obtaining another DNA test and to give Jaso additional time to consider a plea offer that was pending. After questioning Jaso to confirm he understood the nature of his request and that the additional time would be excluded from the calculation of speedy trial, the court granted the request. The record refutes Jaso's argument that these 28 days should not be excluded on the basis that the continuance was due to a lack of medication.

The remaining period of these 91 days resulted from Jaso's oral motion on March 13, 2020, to continue the trial from April 7 to June 9. A transport order had been issued to bring Jaso from the NSP to the courthouse on March 13, but he refused transport. Consequently, defense counsel requested a continuance to the June jury term, which continuance was granted. At the hearing on the motion for absolute discharge, Jaso's counsel argued that this time should not be excluded from the speedy trial calculation because the Department of Correctional Services failed to provide Jaso's medications for transport. At a subsequent evidentiary hearing on the motion for absolute discharge, Jaso's counsel offered two affidavits from staff members at the Department of Correctional Services in support of his position. However, the district court determined that the affidavits refuted Jaso's position.

The first affidavit was from an administrative assistant at the NSP. Therein, the administrative assistant attested that on June 26, 2020, Jaso's counsel sent her an email including "attachments of motions and orders from this Court for . . . Jaso to be transported to Court in Dawson County on May 14, 2020 . . . with a supply of any medications he was prescribed and taking at this facility." She then confirmed that "this facility was never provided with copies of these orders and was never given notice of these orders." However, this is not surprising

because, as the court noted in its order, Jaso appeared at the May 14 hearing via videoconference, such that there was no need for him to be transported with his medication.

The second affidavit was from a medical provider at the NSP, Margaret Chipendo. Chipendo attested that she worked with Jaso to assist him with managing his "PTSD, anxiety, and mood disorder," which management included psychotropic medications. Chipendo attested that Jaso "was failing to take one of his medications as prescribed in the early part of this year because of a misunderstanding on his part." Chipendo also confirmed that Jaso reported being in the Dawson County jail without his medications for 4 days prior to the February 24, 2020, hearing, and she further attested that Jaso's descriptions of lethargy and "other symptoms" "would be consistent with discontinuing his medications." Chipendo noted that because "[a]bruptly discontinuing his medications could be dangerous" for Jaso, "[i]t was therefore decided that [he] should be taken off his medications for a period." Chipendo added that Jaso "was not placed back on his medications until May 30, 2020."

Thus, the evidence is that Jaso was not even prescribed to take his medications at the time that he refused transport to the March 13, 2020, hearing. Indeed, in the written supplement to his motion for discharge, Jaso argued that he "refused to leave the Department of Correction[al Services] because he had not been placed back on his medication by DOC staff and he felt the medication was necessary for him to effectively participate in that hearing." Although Jaso may have felt that his medications were necessary, it appears the medical personnel in charge of managing his medications disagreed. Moreover, Jaso was apparently without his medications during hearings on February 24 and May 14, yet the court was nevertheless satisfied that Jaso was able to effectively participate in those proceedings.

[9] Based on the foregoing evidence, Jaso argued that the 91 days in question should not be excluded because they "were

precipitated by his lack of medication which prevented him for [sic] effectively participating in any hearings." However, as the district court observed, the evidence weighs against that claim. In any case, even if it were true that Jaso's lack of medication prevented him from consenting to his counsel's requests for continuance, § 29-1207(4)(b) excludes the period of delay resulting from a continuance granted at the request or with the consent of the defendant *or his or her counsel*. See *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004) (delay resulting from defense counsel's request for continuance was excludable despite defendant's objections thereto).

[10] Additionally, Jaso argued that excluding the 91 days "would violate [§] 29-1207(4)(f)," but Jaso's interpretation of that section is misguided. Section 29-1207(4)(f) provides for the *exclusion* of a period of delay when such was precipitated by good cause. However, Jaso relied on that section to advocate for the *inclusion* of time for speedy trial purposes. Such an interpretation of § 29-1207 would run contrary to the plain language of the statute and existing precedent. Jaso explicitly acknowledged that the entire 91 days of delay were "due to continuances made by [Jaso] and his attorney." The extent to which Jaso had "good cause" for requesting the continuances is of no consequence under § 29-1207(4)(b). See *State v. Sims*, 272 Neb. 811, 725 N.W.2d 175 (2006) (in determining whether period of delay is attributable to defense counsel's motion to continue, appellate court need not inquire as to what extent there was good cause for delay).

Accordingly, the district court properly excluded the contested 91 days from its speedy trial calculation; therefore, Jaso's motion for discharge on May 14, 2020, was prematurely filed because the speedy trial clock had been extended to July 15. A timely appeal from the pretrial order denying absolute discharge would not have resulted in a reversal and prevented a subsequent trial and conviction. Consequently, Jaso cannot prove he was prejudiced by counsel's failure to timely appeal the denial of his motion for discharge.

### (b) Constitutional Speedy Trial

[11] To the extent that the district court's August 31, 2020, order addressed the merits of Jaso's constitutional speedy trial right, we note that there is no appellate jurisdiction over a pretrial order denying a motion for discharge on constitutional speedy trial grounds until the case is concluded. See *State v. Abernathy*, 310 Neb. 880, 969 N.W.2d 871 (2022). Jaso's argument on appeal is that trial counsel was ineffective for failing to immediately perfect an appeal from the district court's August 31 order. However, as discussed in *Abernathy*, the constitutional speedy trial issue was not immediately appealable at that time. Thus, trial counsel could not have been ineffective for failing to immediately perfect an appeal on that issue.

### 2. Ineffective Assistance of Counsel for Promising Maximum Sentence

Jaso's second assignment of error alleges that trial counsel was ineffective for inducing Jaso into the "plea agreement" by promising a maximum sentence of 10 years of incarceration. Jaso argues that he "advised trial counsel that [he] would not enter into the plea agreement unless the sentence was capped at 10 years, otherwise he wanted to go to trial." Brief for appellant at 26. Thus, Jaso contends that "[i]f defense counsel actually induced [Jaso] into entering a plea agreement . . . by advising [Jaso] that the judge could not sentence [Jaso] to more than 10 years of incarceration," then counsel was clearly deficient. *Id*. at 27. Jaso then indicates that the record is insufficient to address this claim on direct appeal because the record fails to reveal the substance of any conversations between Jaso and counsel.

Jaso is correct that the record fails to reveal whether or not his counsel actually advised him that he could not be sentenced to more than 10 years. However, at the March 17, 2021, hearing, the court recited the substance of the agreement and specifically asked Jaso whether "anybody promised you

anything, except what I just described here in open court . . . that would cause you to enter into this agreement," to which Jaso simply responded, "No." Thereafter, the court explicitly advised Jaso that count II was "punishable by a maximum of 20 years' imprisonment," adding, "[d]o you understand those are the penalties that apply?" Jaso responded, "Yes, I do." Accordingly, we conclude Jaso cannot show prejudice, because he acknowledged on the record that count II was punishable by a maximum of 20 years' imprisonment and the record refutes that he was enticed to entering the plea by a promise of a maximum sentence less than that.

## VI. CONCLUSION

For the foregoing reasons, we conclude that Jaso cannot show prejudice with regard to either claim of ineffective assistance. As these were the only claims raised on direct appeal, we affirm Jaso's conviction and sentence.

AFFIRMED.